Charles Emanuel JEFFERSON,
Appellant,

v.

The STATE of Texas, Appellee.

No. 14–10–00739–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 28, 2011.

Steve J. Gilbert, Richmond, for appellant.

John Harrity, III, Gail Kikawa McConnell, Richmond, for state.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BOYCE.

## OPINION

CHARLES W. SEYMORE, Justice.

A jury convicted appellant, Charles Emanuel Jefferson, of two counts of aggravated assault—deadly weapon. In two issues, appellant contends the evidence is legally insufficient to support his convictions and to corroborate accomplice-witness testimony. We affirm.

## I. BACKGROUND

In October 2007, Theresa Walker resided in a Fort Bend County house with her husband, Albert Walker Sr., daughter, G.B., son, L.B., and step-son, A.W. Contemporaneously, there was a gang-related feud between "100 Click" (with which appellant was associated) and "Mash Mode" (with which A.W. was associated) pertaining to a girl who formerly dated a member of 100 Click but was currently dating A.W.

At approximately 8:00 p.m. on October 21, Theresa was downstairs in her bedroom which was located in the rear of the house, and L.B. was upstairs in a game room that faced the street; no one else was in the house. Theresa's black S.U.V. was parked in her driveway. Theresa heard gunfire, ran to her closet, and dialed 911. As evidenced by photographs of the house taken after the shooting, multiple bullets were fired into the house. Many of the bullets entered the house and damaged walls and furniture, including walls in the game room. Police collected approximately thirty-two bullet casings outside the house. The casings revealed that at least three firearms were used during the attack: an assault rifle, a hunting rifle, and a pistol. Additionally, the casings were spread in a pattern that indicated the shooters had been walking while discharging their firearms. Garfield Norris, who was a neighbor of Theresa's, testified that he observed four persons shooting at Theresa's house, including appellant.

J.H., who was sixteen years old at the time of the shooting, testified as follows. She and several other persons, including appellant and Wilford Trey Jones, were at Vicline St. Hillaire's house prior to the shooting.[1] Jones was in possession of a firearm. They rode in multiple vehicles to Theresa's house. When they arrived at the house, "[Jones] got out and some other boys got out and we just started hearing shooting." Although she did not observe appellant shooting a firearm, J.H. testified appellant was present during the shooting.

Appellant was charged with two counts of aggravated assault for intentionally and knowingly threatening Theresa and L.B. with imminent bodily injury while using and exhibiting a firearm. Jones and St. Hillaire were subpoenaed by the State to testify at appellant's trial.[2] Jones testified that appellant was at the scene of the shooting, but he did not know whether appellant possessed or shot a firearm. St. Hillaire testified that he rode in a vehicle to Theresa's house that evening but was asleep. He explained that he was awakened by the sound of gunfire and did not see who the shooters were or whether appellant was present at the scene. The State presented St. Hillaire's prior-inconsistent statement in which he told police that appellant was one of the shooters. St. Hillaire responded that he made this statement because of police requests and not because it was true.

---

1. Jones and St. Hillaire testified that they were associated with 100 Click, although they denied that 100 Click is a street gang.

2. Prior to testifying, Jones pleaded guilty to aggravated assault and was sentenced to five years' confinement; a jury convicted St. Hillaire of the same offense and sentenced him to sixteen years' confinement.

256

The trial court instructed the jury that it could consider the testimony of Jones and St. Hillaire only if the jury found other evidence tended to connect appellant to the offense. The jury was also instructed that it could convict appellant either as a principal or a party to the offense. The jury convicted appellant and sentenced him to fifteen years' confinement on each count, to run concurrently.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is legally insufficient to support his aggravated-assault convictions.

### A. Standard of Review

When reviewing sufficiency of evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 899 (plurality op.). We may not sit as a thirteenth juror and substitute our judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *Id.* at 899, 901; *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim.App.1986) (expressing that jury may choose to believe or disbelieve any portion of the testimony). We defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim.App.2007). The sufficiency of the evidence is measured by elements of the offense as defined in the hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.

Crim.App.2007). An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. *Id.* at 16. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id.* A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Id.* Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. *Id.* at 13.

■ A person commits aggravated assault if he intentionally or knowingly threatens another with imminent bodily injury while using or exhibiting a deadly weapon during the assault. Tex. Penal Code Ann. §§ 22.01, 22.02 (West 2011). "Deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(17) (West 2011).

### B. Analysis

The crux of appellant's argument is that no evidence supports a finding that he intended to *threaten* Theresa or L.B. with imminent bodily injury. Appellant argues that he could not have threatened Theresa with a firearm because she admitted she did not see anyone use or exhibit a firearm. Furthermore, appellant argues that the jury could not determine whether L.B. felt threatened because he did not testify. We disagree with appellant's contentions.

■ A person commits assault by threat when he acts with the intent to cause in another person a reasonable apprehension

of imminent bodily injury, though not necessarily with the intent to cause such harm. *Dobbins v. State*, 228 S.W.3d 761, 766 (Tex.App.-Houston [14th Dist.] 2007, pet. dism'd, untimely filed). It is well established that a threat may be communicated by action or conduct as well as by words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex.Crim.App.1984).

Theresa testified at 8:00 p.m. on October 21, 2007, she was in her downstairs bedroom and L.B. was in the upstairs game room when she heard multiple gunshots. At the time of the shooting, Theresa's black S.U.V. was parked in front of the house. Norris witnessed appellant and three other persons shooting at Theresa's house. As a result of the shooting, the exterior and interior of Theresa's house, including the game room, were riddled with bullet holes. According to several witnesses, the shooting was the result of a gang-related feud pertaining to a girl who was dating A.W. Furthermore, during a police interview, appellant stated that, prior to the shooting, St. Hillaire "had asked [appellant] if he was going to help him take care of some business." According to the interviewing officer, after he asked appellant what "take care of business" meant, "appellant's best summary ... was that it was not good."

■ We conclude that this evidence supports a finding beyond a reasonable doubt that appellant discharged a firearm into Theresa's home with the intent to cause a reasonable apprehension of imminent bodily injury to A.W. or his family.[3] We recognize that whether shooting at a house constitutes aggravated assault or the separate offense of deadly conduct depends on the defendant's *mens rea*.[4] The former offense requires that the defendant *intentionally or knowingly* threaten another person, whereas the latter offense requires that the defendant act *recklessly* regarding whether the house is occupied. *Compare* Tex. Penal Code Ann. § 22.01(a)(2) *with id.* § 22.05(b)(2) (West 2011). There was no direct evidence pertaining to whether appellant or his accomplices knew that Theresa's house was occupied during the shooting. However, evidence the shooting occurred at 8:00 p.m. and that Theresa's S.U.V. was parked outside of her house supports a logical inference appellant and his accomplices believed persons were inside the house. The State was not required to prove Theresa and L.B. actually saw the firearms or elicit testimony from L.B. that he felt threatened. Evidence that appellant fired bullets into the house while believing someone was present supports an inference that he intended to threaten. Moreover, the fact that Theresa heard the gunshots and bullets entered her house, including the room where L.B. had been, supports a finding that they perceived the threat. Having reviewed all the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support appellant's convictions. We overrule appellant's first issue.

### III. ACCOMPLICE-WITNESS TESTIMONY

■ In his second issue, appellant contends the evidence is legally insufficient to corroborate St. Hillaire's and Jones's accomplice-witness testimony. A defendant cannot be convicted of an offense based on the testimony of an accom-

---

**3.** Even if appellant intended to threaten A.W. only, the jury was instructed that a person is criminally responsible for causing a result when the only difference between what actually occurred and what was intended is that a different person was injured, harmed, or otherwise affected. *See* Tex. Penal Code Ann. § 6.04(b) (West 2011) (transferred intent).

**4.** Appellant was not charged with the lesser-included offense of deadly conduct, and an instruction regarding this offense was not submitted to the jury.

plice unless such testimony is corroborated by other evidence tending to connect the defendant to the offense. Tex.Code Crim. Proc. Ann. art. 38.14 (West 2005). To ascertain whether the corroborating evidence is sufficient, we ignore the accomplice-witness testimony and view the remaining evidence in the light most favorable to the jury's verdict. *Malone v. State,* 253 S.W.3d 253, 257 (Tex.Crim.App. 2008). We then ask whether a rational fact finder could have concluded that the non-accomplice evidence tends to connect the defendant to the offense. *Simmons v. State,* 282 S.W.3d 504, 508 (Tex.Crim.App. 2009). Because there is no precise regarding to the amount of additional evidence required to corroborate accomplice witness testimony, we evaluate each case based on unique facts. *Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex.Crim.App.1996).

As noted above, Norris testified that he saw appellant and three other persons shooting Theresa's house on the night in question. We conclude a rational fact finder could have determined that this evidence tended to connect appellant to the charged offenses. Accordingly, appellant's second issue is overruled.

We affirm the trial court's judgment.