**Affirmed as Modified and Memorandum Opinion filed August 9, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00781-CR

_____

**PAUL IRWIN JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1238106**

## MEMORANDUM OPINION

Appellant Paul Irwin Jackson was convicted of aggravated assault of a family member by using or exhibiting a deadly weapon. He challenges his conviction, arguing that the trial court erred in refusing to give the jury the option to convict him of the lesser-included offenses of assault and deadly conduct. He additionally contends that the evidence was legally insufficient to support the finding that he used or exhibited a deadly weapon in the course of assaulting the complainant. In a cross-point, the State asks us to reform the judgment to include an affirmative finding of family violence. We find no error in the jury charge or in the trial court's finding that appellant used a deadly weapon,

but we agree with the State that the trial court erred in failing to include in the judgment an affirmative finding of family violence. We accordingly reform the judgment to add an affirmative finding of family violence, and we affirm the judgment as modified.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

For over five years, appellant had intermittent dating relationships with two women, Jaqueline Ausby and Monica Holiday, and had children with each of them. At the time of the charged offense, complainant Holiday had loaned appellant five hundred dollars, and although she offered to come to his house for him to repay the loan, he insisted on meeting her at a hotel. Holiday agreed, but then drove to another house on his street and waited for appellant to leave. When she saw his truck pass by, she drove to his house to see if Ausby was there. She parked in the driveway and when she knocked at appellant's door, Ausby answered.

While the two women stood at the doorway talking, appellant returned. Ausby went back into the house and locked the door, and as Holiday started back to her car, appellant began beating her head and face with his fists, knocking off her glasses and causing her cell phone to fall and separate from its battery. Holiday fell to the ground and appellant began kicking her in the stomach[1] as she screamed for help and crawled to her car. When she tried to stand up, appellant punched her repeatedly in the head.

Holiday made it to her car and got behind the wheel, but appellant stood between Holiday and the open car door so that she couldn't close it. He leaned into the car and continued punching her, and whenever Holiday raised her hands to shield her head, appellant punched her in the stomach. He held her car keys and told her to move over to the passenger seat, but Holiday told him that she wouldn't let him take her anywhere and

_____

[1] Holiday testified at trial that she recently had told appellant that she believed she was pregnant.

2

kill her.   She kicked appellant in the stomach, and when he backed up a little, she grabbed her keys.   Appellant moved away from Holiday's car, and believing the assault was over, Holiday started to retrieve her glasses.   When she stood up in the angle formed by her open car door, she saw that appellant had just retrieved a hammer from his truck.

Appellant swung the hammer at Holiday's head but she ducked back into the car, pulling the door closed.   The hammer struck the car door just below the window. Appellant then swung the hammer at the windshield, breaking a large hole in the glass. Holiday quickly backed her car out of the driveway, turning the steering wheel so that the car was facing the correct direction on the street.   As she shifted gears into drive, appellant threw the hammer with such force that it shattered the right rear window and landed on the back seat.   Holiday drove away, but appellant got into his truck and pursued her, "tailgating" her until she spotted a sheriff's deputy in a parking lot.   When she pulled into the lot to speak to the officer, appellant drove away.

The officer that Holiday saw in the parking lot was Deputy Marc Dupont, and he testified that when Holiday approached him, she appeared to have been "severely beaten." Her face was bloody; her hair was in disarray; her shirt was twisted and stretched; and her jaw was swollen so that he had difficulty understanding her speech.   After she had been examined by paramedics, Holiday led officers to appellant's home.   Law-enforcement officers recovered Holiday's glasses and the pieces of her cell phone from appellant's front yard, and they photographed her bloodstains on the driveway.   Neither appellant nor Ausbey was home, but deputies later returned with a warrant and arrested appellant, whom they found hiding in the attic.

Appellant was charged by indictment with aggravated assault of a family member by intentionally and knowingly threatening her "with imminent bodily injury by using and

3

exhibiting a deadly weapon, namely, a hammer."[2]  At trial, appellant's defense counsel argued that appellant used the hammer only to damage Holiday's car, and asked the trial court to instruct the jury on the lesser-included offenses of simple assault and deadly conduct.  The trial court refused, and the jury found appellant guilty of the charged offense and assessed punishment at twenty years' confinement.  The trial court orally pronounced sentence and included in the written judgment the affirmative finding that appellant used or exhibited a deadly weapon.  The judgment indicates that appellant was convicted of "Aggravated Assault - Family Member," but it contains no affirmative finding that the offense was an act of "family violence."

On appeal, appellant argues that the evidence is legally insufficient to support the finding that he used or exhibited a deadly weapon in the course of his assault on Holiday. In addition, he contends that the trial court erred in failing to instruct the jury on the lesser-included offenses of simple assault and deadly conduct.  In a cross-point, the State asks us to reform the judgment to include an affirmative finding that the aggravated assault was an act of family violence.

## II.  SUFFICIENCY OF THE EVIDENCE

Appellant argues that the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon in the course of committing an assault against Holiday.  When evaluating the sufficiency of the evidence, we "consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt."  *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).  In doing so, we may not reevaluate the weight or

---

[2] Capitalization normalized.

4

credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In a challenge to the sufficiency of the evidence, our role "is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Id.* (quoting *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009)).

Here, appellant's challenge is focused narrowly on the deadly-weapon finding. A "deadly weapon" can be "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2011). We evaluate "capability" in light of the facts as they existed at the time of the offense. *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). In determining whether an object is a deadly weapon, jurors may consider factors such as (a) the accused's words, (b) the object's intended use, (c) its size and shape, (d) testimony that the complainant feared death or serious bodily injury, (e) the severity of any wounds inflicted, (f) the manner in which the assailant allegedly used the object, (g) the physical proximity of the parties, and (h) any testimony as to the weapon's potential for causing death or serious bodily injury. *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Although appellant did not speak or write threatening words to Holiday and did not wound her with the hammer, all of the remaining factors were present here. First, the jury heard testimony that the hammer's intended use was to "rip down walls."[3] Second, its size was described as "huge," and the hammer itself was admitted into evidence. Third, Holiday testified that she felt threatened because she "thought he was coming at my head with the hammer." Fourth, Holiday testified about the manner in which appellant used the hammer. She stated that she was outside of her car when appellant swung the hammer toward her head and she ducked backed into the car, closing the door. The hammer struck the door she had just closed, and a law-enforcement officer testified without contradiction

---

[3] At oral argument, appellant's counsel characterized it as a sledgehammer.

that the hammer could have gone through the door. Appellant next struck the windshield, and photographs admitted at trial show that this blow left a hole in the windshield in the area in front of a driver's face. Appellant then threw the hammer, shattering a rear window of Holiday's car as she attempted to drive away. Fifth, Holiday's description of the assault shows that the parties were in very close proximity during most of the time that appellant exhibited or used the hammer. And sixth, Deputy DuPont testified that a hammer is a deadly weapon because a person can be killed if hit hard enough with it. A second officer, Deputy Ben Rivaux, similarly testified that a hammer of the size used here is considered a deadly weapon because it can be used to hit someone with force sufficient to cause death.

This evidence is more than sufficient to support the deadly-weapon finding. We therefore overrule this issue.

### III. FAILURE TO CHARGE ON LESSER-INCLUDED OFFENSES

In his remaining issue, appellant contends that the trial court erred in failing to charge the jury on the lesser-included offenses of assault and deadly conduct. Claims of charge error are subject to a two-step inquiry. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). First, we determine if there was error in the charge. *Id.* (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). If so, then we determine whether the appellant was harmed by the error. Where, as here, the appellant objected to the error in the trial court, then we will reverse if the error caused "some harm," that is, if the error was "calculated to injure the rights of the defendant." *Id.* (citing *Alamanza*, 686 S.W.2d at 171).

Appellant contends that the trial court erred in failing to charge the jury on two lesser-included offenses. The determination of whether such a charge is required also involves a two-step inquiry. First, we must determine "whether the offense contained in

6

the requested instruction is a "lesser-included offense" of the charged offense. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). This term is statutorily defined as follows:

> An offense is a lesser included offense if:
>
> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). An offense that meets any of these definitions is a lesser-included offense to the offense charged. *Hicks v. State*, No. PD-0495-11, 2012 WL 2400758, at *2 (Tex. Crim. App. June 27, 2012).

In the second step of our inquiry, we must determine whether the evidence admitted at trial would permit a rational jury to find the defendant guilty only of the lesser-included offense. *Goad*, 354 S.W.3d at 446. "'[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Sweed v. State*, 351 S.W.3d 63, 67–68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)). This standard is met if "some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id.* (citing *Robertson v. State*, 871 S.W.2d 701, 706 (Tex. Crim. App. 1993)).

7

## A.      Simple Assault

A person commits simple assault by threat if he intentionally or knowingly threatens another with imminent bodily injury.  TEX. PENAL CODE ANN. § 22.01(a)(2) (West 2011).  A threat can be communicated through conduct as through words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).  Even if an actor does not intend to harm another person, the actor can commit assault by acting with the intent to cause the other person to feel reasonable apprehension of imminent bodily injury. *Jefferson v. State*, 346 S.W.3d 254, 256–57 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Dobbins v. State*, 228 S.W.3d 761, 766 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd, untimely filed)).  The offense rises to the level of aggravated assault—the offense with which appellant was charged—if, during the assault, the actor uses or exhibits a deadly weapon.  TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). Simple assault by threat therefore is a lesser-included offense of aggravated assault.

We next must determine whether the evidence would have permitted rational jurors to find appellant guilty only of simple assault and not of the charged offense.  Here, appellant was charged with aggravated assault by using or exhibiting a deadly weapon, namely, a hammer.  The hammer was admitted into evidence, and on appeal, appellant concedes that he did use or exhibit it.  Thus, a rational jury could find appellant guilty of nothing more than simple assault only if it failed to find that the hammer that appellant used or exhibited to Holiday was a deadly weapon.

We already have described the abundant and uncontroverted evidence that the hammer was used as a deadly weapon, and it is unnecessary to detail that evidence again. Appellant nevertheless contends that the jury rationally could have found that he was guilty only of simple assault because "the complainant was not placed in any imminent harm because of Appellant's actions in damaging her automobile with a hammer."

8

First, he points out that there is no evidence that he actually hit Holiday with the hammer. But, appellant was not charged with causing Holiday *actual* bodily injury; he was charged with threatening her with *imminent* bodily injury. Harm is "imminent" if it is "close," "menacing," "impending," or "on the point of happening." *Williams v. State*, 194 S.W.3d 568, 574 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 353 (Tex. Crim. App. 2008). No actual contact between Holiday and the hammer was alleged, and none was required to be proven for the jury to convict appellant of aggravated assault; thus, the absence of contact is not a basis on which a rational jury could conclude that appellant was guilty only of simple assault.

Appellant's remaining arguments on this issue are based on the mistaken assumption that any use or exhibition of the hammer was directed solely at Holiday's car. He asserts that after he first retrieved the hammer, he did not attempt to break the driver's side window, "instead opting to cause a dent in the driver's side door." He contends that, given the hammer's size, he easily could have broken into Holiday's car if he had chosen to do so. He also points out that one witness "agreed that a hammer is not a deadly weapon if it is used to hit a car." And finally, he states that there was no evidence that a hammer "is a deadly weapon when used to damage chattel, such as an automobile."

In making these arguments, appellant has ignored Holiday's testimony that appellant first swung the hammer toward her head when she was *outside* the car. For a jury to conclude that appellant was guilty only of simple assault, it would have to conclude that in swinging a "huge" hammer at Holiday's head, appellant threatened her with imminent bodily injury, but he did so without using or exhibiting "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Because no rational jury could reach such a result, we conclude that the trial court did not err in failing to charge the jury on this lesser-included offense.

9

## B. Deadly Conduct

Appellant also contends that the trial court erred in failing to charge the jury on the lesser-included offense of deadly conduct. A person commits the offense of deadly conduct "if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05(a) (West 2011). It is a lesser-included offense of the charged offense of aggravated assault by intentionally or knowingly threatening to cause bodily injury by using a deadly weapon. *Guzman v. State*, 188 S.W.3d 185, 190–91 (Tex. Crim. App. 2006); *see also Blissit v. State*, 185 S.W.3d 51, 55 (Tex. App.—San Antonio 2005, pet. ref'd) (holding that deadly conduct also is a lesser-included offense of aggravated assault "by *using and exhibiting* a deadly weapon"). "Deadly conduct" differs from aggravated assault in that it requires a less culpable mental state. Specifically, appellant was charged with "intentionally and knowingly" threatening Holiday with imminent bodily injury by using and exhibiting a deadly weapon. "A person acts intentionally . . . when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). Conduct is "knowing" if the person is "aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b). The offense of deadly conduct requires only that a person act "recklessly." *Id.* at § 22.05(a). "A person acts recklessly . . . when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* at § 6.03(c).

In asserting that the trial court erred in failing to charge the jury on the offense of deadly conduct, appellant again relies on the fact that only Holiday's car was damaged by the hammer, but he ignores the evidence that he swung the hammer at Holiday's head when she was outside the car. Moreover, appellant retrieved the hammer and swung it at Holiday immediately after he tried to make her move to the passenger seat of her car, and she refused, saying, "No, you're not going to kill me. You're not going to take me

10

anywhere and kill me." No rational jury could find that appellant engaged in conduct that was merely reckless when he responded to Holiday's protestations against allowing him to drive her anywhere by then retrieving a "huge" hammer—capable of "ripping out walls" and going through car doors—and swinging it at her head. We accordingly overrule this issue.

## IV. FAILURE TO MAKE AN AFFIRMATIVE FINDING OF FAMILY VIOLENCE

In a cross-point, the State asks that we reform the trial court's judgment to add an affirmative finding of family violence. Article 42.013 of the Texas Code of Criminal Procedure provides that if the trial court "determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. ANN. art. 42.013 (West 2006). "Family violence" includes "dating violence." TEX. FAM. CODE ANN. § 71.004(3) (West 2008). "Dating violence" includes an act that is "committed against a victim . . . with whom the actor has or has had a dating relationship" and that is intended to result in assault, or that "reasonably places the victim in fear of imminent physical harm, bodily injury, assault, or sexual assault." *Id.* at 71.0021(a)(1)(A), (a)(2). Here, the judgment includes the trial court's affirmative finding that appellant used or exhibited a deadly weapon but does not include an affirmative finding that appellant's assault was an act of family violence.

Appellant responds that this court has no jurisdiction to reform the judgment as requested because the State failed to timely file a notice of appeal. But, "when a defendant appeals his conviction, the courts of appeals have the jurisdiction to address any error in that case." *Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012). Appellate courts have the authority and duty to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex.

11

App.—Dallas 1991, pet. ref'd); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting the reasoning set forth in *Asberry*). The record here shows that appellant was charged by indictment with "Aggravated Assault - Family Member," and the complainant is identified in the indictment as "Monica Holiday, a person with whom the Defendant had a dating relationship."[4] The jury found appellant guilty "as charged in the indictment," and the trial court accepted the verdict, entering a judgment of conviction for "Aggravated Assault - Family Member." It is undisputed that appellant and Holiday dated and had a child together.[5] We accordingly order the judgment reformed to add an affirmative finding of family violence.

## V. CONCLUSION

On this record, a rational jury could have found beyond a reasonable doubt that appellant used a deadly weapon in assaulting Holiday, but could not have found that he was guilty only of simple assault or deadly conduct. We agree with the State that the trial court erred in failing to include a family-violence affirmative finding in the judgment. We accordingly reform the judgment to add the affirmative finding that the offense for which he was convicted constituted an act of family violence. We affirm the judgment as modified.

/s/    Tracy Christopher
Justice

Panel consists of Justices Boyce, Christopher, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[4] Capitalization normalized.

[5] An affirmative finding of family violence is based on evidence adduced in the guilt phase of trial, and in that phase of the proceedings, Holiday testified about her relationship with appellant. Her testimony was uncontroverted; in the punishment phase of trial, both appellant and Ausby testified to these same facts.