

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00050-CR

ALFREDO PAEZ, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. DC-2023-CR-2239, Honorable William R. Eichman II, Presiding

February 11, 2025

OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Alfredo Paez, Jr. was one of several shooters at a restaurant in November 2020. His actions resulted in his prosecution and conviction for several felonies. Several issues pend for review. They concern double jeopardy, the sufficiency of the evidence, the trial court's jury charge, community supervision, and the effectiveness of trial counsel. We affirm.

***Background***

In November 2020, an altercation between rival motorcycle gangs occurred in a Lubbock family restaurant. As members of one group (Kinfolk) played pool, members of the rival body (Bandidos) entered the room. Words were exchanged. Guns drawn. Shots fired, and at least one person struck.

Appellant (a Bandido) admitted to being one of the shooters. Video captured him entering the room, crossing in front of his rivals, reaching into his vest, and proceeding to the rear of the room with a gun by his side. Soon thereafter, he commenced firing the weapon. Those actions resulted in his indictment on seven counts of aggravated assault by threat with a deadly weapon. The jury found him guilty on four counts, two concerned the charged offense of aggravated assault (Counts I and VII) and two encompassed the lesser-included offense of engaging in deadly conduct (Counts II and III). The jury acquitted him of Counts IV, V, and VI. The trial court entered separate judgments on each count memorializing the jury's decision as to the respective Count.

***Issues One and Six—Double Jeopardy and Ineffective Assistance***

Via his first issue, appellant contends his convictions violate the Double Jeopardy Clause. Even though he fired multiple times, his conduct allegedly occurred in one brief event. Because the gravamen of the offense for aggravated assault by threat and deadly conduct is the conduct itself and that conduct was one brief instance of discharging multiple bullets, the State could only try him on one count of aggravated assault and/or deadly conduct, in his estimation. So, double jeopardy barred his prosecution for seven counts of aggravated assault and/or deadly conduct. Moreover, appellant attacks the effectiveness of his trial counsel, via issue six, for purportedly neglecting to timely raise this double jeopardy claim. We overrule the issues.

2

The gravamen of aggravated assault is either causing bodily injury or threatening imminent bodily injury. *Shelby v. State*, 448 S.W.3d 431, 438-39 (Tex. Crim. App. 2014). Furthermore, the allowable unit of prosecution for an assaultive offense in Texas is each victim. *Id.*; *Gunter v. State*, 673 S.W.3d 335, 344 (Tex. App.—Corpus Christi 2023, pet. ref'd). This general rule includes assaults by threat. *Marson v. State*, 556 S.W.3d 924, 927-8 (Tex. App.—Eastland 2018, no pet.) (involving assault by threat and holding each victim to be a separate unit of prosecution). As for deadly conduct involving the discharge of a firearm, the unit of prosecution is each discharge. *Lozano v. State*, 577 S.W.3d 275, 278 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Miles v. State*, 259 S.W.3d 240, 249 (Tex. App.—Texarkana 2008, pet. ref'd).

Here, appellant fired his handgun seven or more times. Each person named in each count was a distinct victim of that assaultive conduct. Furthermore, per *Shelby* and *Marson*, the State was lawfully permitted to prosecute appellant for allegedly assaulting by threat each of those seven named victims. Appellant's having discharged the firearm at least seven times also meant the State was lawfully permitted to prosecute him on seven counts of engaging in deadly conduct, per *Lozano* and *Miles*. Double jeopardy did not bar these efforts, and we reject appellant's contention otherwise.

Our rejection of appellant's double jeopardy claim also undermines Issue Six. Defense counsel is not ineffective for failing to raise or pursue groundless points. *Kent v. State*, 982 S.W.2d 639, 641 (Tex. App.—Amarillo 1998, pet. ref'd, untimely filed) (holding that counsel is not required to perform frivolous or futile acts to be reasonably effective). Thus, neglecting to pursue the aforementioned double jeopardy complaint below did not render defense counsel ineffective.

3

***Issue Two—Sufficiency of the Evidence***

By his second issue, appellant argues that the jury's verdicts of guilt lack sufficient evidentiary support. Two grounds underlie his supposition. One concerns the alleged inconsistency between finding him not guilty on Counts IV, V, and VI and guilty on the remainder; supposedly, there "is no way to tell and no way a rational jury would be able to separate appellant's conduct into what was justified and what was not." The other ground concerns whether the State proved appellant intentionally or knowingly assaulted, by threat, the victims named in Counts I, II, or III. We overrule the issue.

The standard of review is well known as set forth in *Turley v. State*, 691 S.W.3d 612, 617 (Tex. Crim. App. 2024). We apply it here.

Regarding the first ground, the jury allegedly accepted appellant's self-defense claim regarding victims Schmittou, Gollihugh, and Gould (Counts IV through VI). Having so accepted the claim of self-defense, the jury cannot find him guilty of victimizing those individuals named in Counts I, II, III, and VII, or so his argument goes. In other words, the verdicts of guilty in Counts I, II, III and VII are fatally inconsistent with those in Counts IV, V, and VI. Inconsistent, arguably, but fatally so they are not.

"When measuring the sufficiency of the evidence, each count must stand or fall on its own." *See Hernandez v. State*, 556 S.W.3d 308, 331 (Tex. Crim. App. 2018). "[I]f a defendant is acquitted of one count and convicted of another based on the same evidence in a single trial, [like here] he cannot rely on the inconsistent verdicts to attack the conviction." *Id.* In effect, the jury remained free to assess the claim of justification as to each victim, and its acquitting appellant on some charges did not preclude its finding him culpable on others.

4

As for the second aspect of this issue, appellant questions the evidence underlying his convictions for aggravated assault by threat. Allegedly, he did not intentionally or knowingly threaten the individuals identified as the victims in Counts I, II, and III. Rather, his threats, if any, were directed at Kinfolk members, not the bystanders identified in the aforementioned counts. And, having directed his threats at Kinfolk, he was not susceptible to conviction for assaulting the bystanders with threat. We disagree.

First, the jury did not convict appellant of aggravated assault by threat via counts II and III, but rather deadly conduct. One commits deadly conduct when **recklessly engaging** in conduct that places another in imminent danger of serious bodily injury. TEX. PENAL CODE ANN. § 22.05(a). As can be seen, threatening another is not elemental to deadly conduct. *See Jefferson v. State*, 346 S.W.3d 254, 257 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating assault by threat required proof that the defendant intentionally or knowingly threatened those in the house, while deadly conduct required proof that the defendant act recklessly when shooting). So, the State was not obligated to prove appellant intentionally or knowingly threatened the victims named in Counts II and III to secure his conviction for deadly conduct. And, appellant does not question the sufficiency of the evidence underlying his conviction for that offense.

On the other hand, aggravated assault occurs when one commits assault while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. § 22.02(a)(2). And, assault occurs when one **intentionally or knowingly threatens** another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2).[1] And, in accordance with these provisions,

---

[1] As stated in *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008), the manner of assault encapsulated within § 22.01(a)(2) "is conduct-oriented, focusing upon the act of making a threat, regardless of any result that threat might cause."

the State alleged, in Count I, that appellant "did then and there intentionally or knowingly threaten TERRANCE WADE with imminent bodily injury and did then and there use or exhibit a deadly weapon . . .." And, to reiterate, appellant asserts that he did not threaten Wade since he only shot at Kinfolk members. With this in mind, we say the following.

In *Castaneda v. State*, No. 07-15-00151-CR, 2016 Tex. App. Lexis 1796 (Tex. App.—Amarillo Feb. 19, 2016, no pet.) (mem. op., not designated for publication), we had occasion to review a conviction for aggravated assault by threat. According to the evidence, appellant repeatedly shot at the house wherein his parents lived and, purportedly, without the intent to hurt anyone therein. *Id.* at *3. Nevertheless, his mother was within the house, was scared by the incident, and texted another that "she was 'lucky to be alive' . . . ." *Id.* So too was his stepfather within the kitchen when one bullet "ended up in the kitchen area." *Id.* In finding the evidence sufficient to support the conviction, we first discussed the elements of the crime and the definitions of the applicable mens rea. *Id.* at 5-6. Then, we observed that "even if appellant did not intend to physically harm another person, he is still responsible if his acts caused another to feel threatened with imminent bodily injury." *Id.* at *8. Again, appellant targeted neither parent with harm. Yet, his mother feared bodily harm while a bullet came within the vicinity of his stepfather. Those circumstances coupled with his repeatedly firing at the house sufficed to support the conviction. *Castaneda* informs our decision at bar.

Appellant may not have directed his threat expressly at Wade. Nevertheless, one of the many, many videos admitted into evidence showed appellant's firing in the direction of Wade. The latter stood within feet of the weapon's muzzle. Indeed, from a muzzle flash captured on video when appellant fired, a fact finder could reasonably infer that at least one bullet passed within a foot of Wade's right shoulder as Wade crouched and

6

retreated. Though not identical to the evidence in *Castaneda*, the aforementioned circumstances satisfy the legal parameters of aggravated assault by threat we discussed there. The accused discharged his weapon. His aim was in the direction of the complainant. And, the conduct was of the ilk to cause a reasonable person to fear for his life.

And, to the foregoing we also add discussion found in *Junious v. State*, No. 01-05-00954-CR, 2007 Tex. App. LEXIS 4811 (Tex. App.—Houston [1st Dist.] June 21, 2007, pet. ref'd) (mem. op., not designated for publication). In effort to stop appellant from hurting Kimberly, the complainant impeded appellant's advance with a knife towards Kimberly. Appellant argued that his conviction for assault by threat should not stand because, among other things, his threats were directed at Kimberly, not the complainant. In rejecting that and his other contentions, the reviewing court indicated "it is the appellant's threat, made with the intent to place the complainant in fear of imminent serious bodily injury" that is pivotal. *Id.* at *11. It mattered not whether the complainant actually feared bodily injury. *Id.* Approaching Kimberly with a knife, encountering the complainant, and instilling the complainant with fear was enough to support the conviction. *Id.* at *11-12. That appellant may have intended to direct his actions at Kimberly did not mandate acquittal. So, the analysis and result in *Junious* bolsters our conclusion that though the accused directs his action at one person, his conduct may nevertheless render him criminally culpable for threatening another.

One must also remember words from *Olivas v. State*, 203 S.W.3d 341 (Tex. Crim. App. 2006). That court observed "threat" encompasses several forms of conduct. Each form indicates an act being performed, as opposed to an act which is perceived by an outside party. *Id*. at 345. The court further described one example of that conduct as "to

7

be a source of danger, harm etc[.] to." *Id.* It is difficult to dispute that discharging a weapon in a manner causing bullets to fly within a foot or two of a person within the accused's immediate field of vision is to act as "a source of danger [or] harm to that person." And, it would not be unreasonable for a fact finder to infer that the accused was aware that the nature of his conduct would be a source of danger or harm to that person. *See* Tex. Penal Code Ann. § 6.03(b) (stating that a person "acts knowingly . . . with respect to the nature of his conduct . . . when he is aware of the nature of his conduct"). So, in sum, the evidence at bar permitted a rational fact finder to conclude, beyond reasonable doubt, that appellant intentionally or knowingly threatened Wade with imminent bodily injury while exhibiting a deadly weapon.

### *Issue Three—Jury Charge Error and Submission to Jury as Seven Separate Offenses*

In issue three, appellant contends the jury charge failed to accurately reflect the law applicable to the case. Allegedly, the trial court erred in two respects. First, it should have instructed the jury that, under § 9.04 of the Penal Code, his conduct was justified if he was justified in the use of force per § 9.31 of the Penal Code, rather than the use of deadly force per § 9.32. Second, the trial court should not have submitted seven application paragraphs but rather "a single application and single self-defense instruction." We overrule the issue.

Regarding the matter of § 9.04 of the Penal Code, that statute provides:

The threat of force is justified when the use of force is justified by this chapter. For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.

8

Tex. Penal Code Ann. § 9.04. Yet, the statute "comes with an express limitation." *Pham v. State*, 639 S.W.3d 708, 713 (Tex. Crim. App. 2022). "It applies only when 'the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary.'" *Id.* It does not apply when deadly force is actually used for the purpose or with the intent of injuring the victim. *Id.* Application of this verbiage negates any entitlement to use of § 9.04 at bar.

Here, no evidence shows that appellant just levied a threat by producing his handgun to create an apprehension that he "will use force if necessary." Rather, he used deadly force by discharging the weapon. Thus, the trial court did not err when refusing to apply § 9.04 and instruct the jury per that statute and § 9.31. *See Gamino v. State*, 537 S.W.3d 507, 510-12 (Tex. Crim. App. 2017) (finding defendant entitled to instruction because he brandished his weapon and told others to "stop," "get away," and "leave us alone" but did not use the gun); *see also Wright v. State*, No. 13-19-00238-CR, 2020 Tex. App. LEXIS 2280, at *12 n.2 (Tex. App.—Corpus Christi Mar. 19, 2020, pet. ref'd) (mem. op., not designated for publication) (stating that "[w]hile Wright's *threat* of force by producing the firearm might be justified under § 9.04, his subsequent firing of the weapon constitute[d] the *use* of deadly force that must be separately justified under § 9.32 of the penal code.") (emphasis in original); *Happy Tran Pham v. State*, 595 S.W.3d 769, 779 (Tex. App.—Houston [14th Dist.] 2019) *aff'd* 639 S.W.3d 708 (Tex. Crim. App. 2022) (stating that appellant was not entitled to the application of § 9.04 because he used deadly force rather than solely threatened it).

As for the complaint about the trial court's submitting seven application paragraphs, the argument is dependent upon our sustaining his Issue One. Appellant

acknowledged as much during oral submission. Having overruled Issue One, we similarly overrule this aspect of Issue Three.

### Issue Four—Verdict on Count I

Through his fourth issue, appellant argues the trial court erred in accepting the jury's verdict of guilty in Count I. Said verdict appeared on a form signed by the jury's foreman. Accompanying that form was another verdict. The latter purported to find appellant not guilty. However, someone struck through the signature of the foreman and wrote "void" on the face of the document. These circumstances purportedly rendered the verdict as to Count I "informal," thereby obligating the trial court to inform the parties and jury of the situation. And, in accepting the verdict of guilty, the trial court allegedly failed to abide by controlling procedures or afford appellant opportunity to poll the jury to verify the verdict's accuracy. We overrule the issue.

We note that the trial court asked the jury foreperson if "the jury reached a unanimous verdict on all seven counts." The foreperson answered "yes." So too did the court ask if either party cared to poll the jury; both answered "no." This illustrates that appellant received the very opportunity purportedly denied him; the trial court afforded him the chance to poll the jury. Appellant now argues that he would have requested the jury be polled had he been aware of the inconsistency in the verdict forms at the time. However, even accepting appellant's argument, he still failed to take the necessary steps to preserve the issue after learning of the inconsistency.

Complaints regarding the trial court's procedure in accepting a verdict must be preserved by objection or motion urged at the earliest opportunity. *Bullock v. State*, No. 01-90-00358-CR, 1991 Tex. App. LEXIS 852, at *12 (Tex. App.—Houston [1st Dist.] Apr. 4, 1991, no pet.) (mem. op., not designated for publication); *see also*, *Perry v. State*, No.

10

07-10-0447-CR, 2012 Tex. App. LEXIS 3987, at *3-5 (Tex. App.—Amarillo May 15, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that appellant's complaint about the allegedly ambiguous way the trial court pronounced the verdict was waived since it was not raised in a timely objection or motion for new trial); *accord*, *Perez v. State*, No. 05-12-00377-CR, 2013 Tex. App. LEXIS 10771, at *29-30 (Tex. App.—Dallas Aug. 26, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that appellant waived the complaint about the ambiguous nature of the verdict by failing to object). Even after discovering the inconsistency in the verdict forms, appellant did not file a motion for new trial raising the issue. Appellant raised his current complaints on appeal, not before the trial court. And, in so urging them for the first time, he does not suggest he lacked the chance to present them below at least through a motion for new trial. So, they were not preserved for review.

### Issue Five—Placement on Community Supervision

Through his fifth issue, appellant urges that the trial court should have placed him on community supervision "with respect to all the offenses for which a judgment of conviction was returned when the jury recommended community supervision as to one of the offenses." We overrule the issue.

Regarding Count VII, the jury assessed punishment at six years imprisonment but also recommend appellant be placed on community supervision. The trial court acquiesced, sentenced appellant to six years imprisonment but ultimately suspended the sentence for six years. However, the trial court pronounced sentence (per the jury's verdicts) of six years imprisonment on Count I, and 180 days imprisonment on Counts II and III. Furthermore, the suspended sentence in Count VII was ordered to run concurrently with the six years levied in Count I. Doing so, in appellant's view, meant

11

"[t]he trial court refused the jury's recommendation that [a]ppellant be placed on community supervision by refusing to also place him on community supervision as to Count I." We overrule the issue.

In this case, the judge was required to place appellant on community supervision for Count VII because the jury recommended it do so. TEX. CODE CRIM. PROC. ANN. art. 42A.055(a). The judge was not required to do the same regarding Count I. Rather, it followed the very recommendation and verdict of the jury by sentencing to imprisonment for six years.

Indeed, the jurors were afforded the opportunity to recommend probation for each count upon which they found appellant guilty; yet, they did not, save for Count VII. In abiding by their decision, it can hardly be said that the trial court "refused the jury's recommendation" or ignored their intent. More importantly, we recognized the legitimacy of the trial court's suspending the sentence on one count while ordering its execution on another in *Drain v. State*, 540 S.W.3d 637, 642-43 (Tex. App.—Amarillo 2018, no pet.).

We affirm.


Brian Quinn
Chief Justice


Publish.

12