ACCEPTED
14-14-00663-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
2/20/2015 5:05:38 PM
CHRISTOPHER PRINE
CLERK

# No. 14-14-00663-CR

In the
## Court of Appeals
For the
## Fourteenth District of Texas
At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
2/20/2015 5:05:38 PM
CHRISTOPHER A. PRINE
Clerk

───────◆───────

## No. 1969753
In the County Criminal Court at Law Number 5
Of Harris County, Texas

───────◆───────

## MARCOS M. FLORES
*Appellant*
V.
## THE STATE OF TEXAS
*Appellee*

───────◆───────

## STATE'S APPELLATE BRIEF

───────◆───────

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ALAN CURRY**
State Bar No: 05263700
Assistant District Attorney
Harris County, Texas

**EDWARD HOLTZ**
**ALLEN OTTO**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
FAX No.: 713/755-5809
curry_alan@dao.hctx.net

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, the State requests oral argument only if oral argument is requested by the appellant.

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Alan Curry** — Assistant District Attorney on appeal

**Edward Holtz** — Assistant District Attorney at trial

**Allen Otto** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Marcos M. Flores**

Counsel for Appellant:

**Carmen Roe** — Counsel at trial and on appeal

**Brian Wice** — Counsel at trial

**Kent Schaffer** — Counsel at trial

**James Kennedy** — Counsel at trial

Trial Judge:

**Hon. Margaret Harris** — Presiding Judge

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ......................................................i

IDENTIFICATION OF THE PARTIES.................................................................ii

INDEX OF AUTHORITIES................................................................... v

STATEMENT OF THE CASE .................................................................. 1

STATEMENT OF FACTS ...................................................................... 1

SUMMARY OF THE ARGUMENT ....................................................... 1

PRE-TRIAL WRIT OF HABEAS CORPUS ................................................... 3

REPLY TO POINT OF ERROR ONE ...................................................... 4

Section 46.02(a-1)(2)(C) is not a regulation of speech or expression and, at worst, only permits incidental limitations on First Amendment freedoms. ........ 6

Even viewed as a regulation of speech or expression, Section 46.02(a-1)(2)(C) is content-neutral. ...................................................................... 10

Section 46.02(a-1)(2)(C) would even survive a challenge if viewed as a content-based regulation........................................................................ 12

Section 46.02(a-1)(2)(C) does not represent an invalid restriction of a person's freedom of association. ...................................................................... 15

REPLY TO POINT OF ERROR TWO ...................................................... 19

The Proper Manner of Construing Section 46.02(a-1)(2)(C) .............................. 21

The appellant's overbreadth challenge is founded upon strained or improper interpretations of Section 46.02(a-1)(2)(C). ............................................. 24

REPLY TO POINT OF ERROR THREE .................................................. 29

*Lanzetta v. New Jersey*.................................................................. 31

*City of Chicago v. Morales* ................................................................................ 33

The Texas Statutory Scheme Concerning Criminal Street Gangs ...................... 35

CONCLUSION ......................................................................................................... 39

CERTIFICATE OF COMPLIANCE .......................................................................... 40

CERTIFICATE OF SERVICE ................................................................................... 41

# INDEX OF AUTHORITIES

**CASES**

*Aguilar v. State,*
 29 S.W.3d 268 (Tex. App.—
Houston [14th Dist.] 2000, no pet.) ................................................................ 16

*Anderson v. State,*
 901 S.W.2d 946 (Tex. Crim. App. 1995) ........................................................ 17

*Aptheker v. Secretary of State,*
 378 U.S. 500 (1964) ........................................................................................ 15

*Asgeirsson v. Abbott,*
 696 F.3d 454 (5th Cir. 2012) .......................................................................... 11

*Barclay v. Florida,*
 463 U.S. 939 (1983) ........................................................................................ 16

*Beasley v. State,*
 902 S.W.2d 452 (Tex. Crim. App. 1995) ........................................................ 17

*Boos v. Barry,*
 485 U.S. 312 (1988) ........................................................................................ 12

*Boykin v. State,*
 818 S.W.2d 782 (Tex. Crim. App. 1991) ........................................................ 21

*Broadrick v. Oklahoma,*
 413 U.S. 601 (1973) ................................................................................... 19, 23

*Brown v. State,*
 98 S.W.3d 180 (Tex. Crim. App. 2003) .......................................................... 21

*Bynum v. State,*
 767 S.W.2d 769 (Tex. Crim. App. 1989) ........................................................ 31

*Cabrera v. State,*
 No. 01-05-00450-CR, 2006 WL 952410
(Tex. App.—Dallas, Mar. 30, 2006, pet. ref'd) .............................................. 18

*Cantu v. State,*
 339 S.W.3d 688 (Tex. App.—
Fort Worth 2011, no pet.) ................................................................................. 8

*City of Chicago v. Morales,*
 527 U.S. 41 (1999) ..................................................................... 15, 20, 33, 34

*City of Renton v. Playtime Theatres, Inc.,*
475 U.S. 41 (1986) ........................................................................ 11

*Colbert v. State,*
108 S.W.3d 316 (Tex. Crim. App. 2003) .......................................... 8

*Collins v. State,*
501 S.W.2d 876 (Tex. Crim. App. 1973) .......................................... 8

*Commission for Lawyer Discipline v. Benton,*
980 S.W.2d 425 (Tex. 1998) ........................................................... 23

*Cornejo v. State,*
917 S.W.2d 480 (Tex. App.—
Houston [14th Dist.] 1996, pet. ref'd) ............................................. 8

*Cuellar v. State,*
70 S.W.3d 815 (Tex. Crim. App. 2002) ........................................... 28

*Dawson v. Delaware,*
503 U.S. 159 (1992) ................................................................... 15, 16

*Dominguez v. State,*
125 S.W.3d 755 (Tex. App.—
Houston [1st Dist.] 2003, pet. ref'd) ............................................... 8

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,*
485 U.S. 568 (1988) ........................................................................ 23

*Ex parte Doster,*
303 S.W.3d 720 (Tex. Crim. App. 2010) ........................................... 3

*Ex parte Ellis,*
279 S.W.3d 1 (Tex. App.—
Austin 2008), *aff'd,* 309 S.W.3d 71
(Tex. Crim. App. 2010) ................................................................... 30

*Ex parte Ellis,*
309 S.W.3d 71 (Tex. Crim. App. 2010) .......................... 3, 19, 29, 30

*Ex parte Forward,*
258 S.W.3d 151 (Tex. Crim. App. 2008) .......................................... 28

*Ex parte Smith,*
178 S.W.3d 797 (Tex. Crim. App. 2005) ........................................... 3

*Ex parte Spann,*
132 S.W.3d 390 (Tex. Crim. App. 2004) .......................................... 22

*Ex parte Thompson,*
442 S.W.3d 325 (Tex. Crim. App. 2014) ....................................................... 7, 10, 11, 19

*Ex parte Weise,*
55 S.W.3d 617 (Tex. Crim. App. 2001) ............................................................................ 3

*Ex parte Williams,*
786 S.W.2d 781 (Tex. App.—
Houston [1st Dist.] 1990, pet. ref'd) ................................................................................ 8

*Flores v. State,*
33 S.W.3d 907 (Tex. App.—
Houston [14th Dist.] 2000, pet. ref'd) ............................................................................ 30

*Garcia v. State,*
239 S.W.3d 862 (Tex. App.—
Houston [1st Dist.] 2007, pet. ref'd) .............................................................................. 17

*Goldberg v. State,*
95 S.W.3d 345 (Tex. App.—
Houston [1st Dist.] 2002, pet. ref'd) .............................................................................. 17

*Hooper v. California,*
155 U.S. 648 (1895) ........................................................................................................ 23

*In re Shaw,*
204 S.W.3d 9 (Tex. App.—
Texarkana 2006, pet. ref'd)................................................................................ 4, 20, 26, 27

*Jefferson v. State,*
346 S.W.3d 254 (Tex. App.—
Houston [14th Dist.] 2011, pet. ref'd) ............................................................................ 8

*Juarez v. State,*
961 S.W.2d 378 (Tex. App.—
Houston [1st Dist.] 1997, pet. ref'd) ................................................................................ 8

*Lanzetta v. New Jersey,*
306 U.S. 451 (1939) .................................................................................................... 31, 32

*Long v. State,*
931 S.W.2d 285 (Tex. Crim. App. 1996) ....................................................................... 30

*Madsen v. Women's Health Center, Inc.,*
512 U.S. 753 (1994) ........................................................................................................ 13

*Martinez v. State,*
323 S.W.3d 493 (Tex. Crim. App. 2010) ................................................... 12, 13, 14, 35

*Mason v. State,*
905 S.W.2d 570 (Tex. Crim. App. 1995) .................................................. 16

*Members of City Council v. Taxpayers for Vincent,*
466 U.S. 789 (1984) ................................................................................ 20

*Miranda-Canales v. State,*
368 S.W.3d 870 (Tex. App.—
Houston [14th Dist.] 2012, pet. ref'd) .................................................... 8

*NAACP v. Alabama ex rel. Patterson,*
357 U.S. 449 (1958) ................................................................................ 15

*Nordyke v. King,*
319 F.3d 1185 (9th Cir. 2003) ................................................................ 9

*O'Brien v. United States,*
391 U.S. 367 (1968) ................................................................................ 7

*Ochoa v. State,*
355 S.W.3d 48 (Tex. App.—
Houston [1st Dist.] 2010, pet. ref'd) ...................................................... 28

*Perry Education Ass'n v. Perry Local Educators' Ass'n,*
460 U.S. 37 (1983) .................................................................................. 13

*Pettigrew v. State,*
999 S.W.2d 810 (Tex. App.—
Tyler 1999, no pet.) ................................................................................ 8

*R.A.V. v. City of St. Paul,*
505 U.S. 377 (1992) ................................................................................ 12

*Rahmani v. State,*
748 S.W.2d 618 (Tex. App.—
Houston [1st Dist.] 1988, pet. ref'd) ...................................................... 23

*Rivera v. State,*
363 S.W.3d 660 (Tex. App.—
Houston [1st Dist.] 2011, no pet.) ..................................................... 27, 30

*Saenz v. State,*
976 S.W.2d 314 (Tex. App.—
Corpus Christi 1998, no pet.) .................................................................. 8

*Sanchez v. State,*
995 S.W.2d 677 (Tex. Crim. App. 1999) ................................................ 24

*Scott v. State,*
322 S.W.3d 662 (Tex. Crim. App. 2010) ...................................................................... 9

*Sell v. United States,*
539 U.S. 166 (2003) ........................................................................................................ 8

*Spence v. Washington,*
418 U.S. 405 (1974) ........................................................................................................ 9

*State v. Edmond,*
933 S.W.2d 120 (Tex. Crim. App. 1996) .................................................................... 22

*Stevenson v. State,*
963 S.W.2d 801 (Tex. App.—
Fort Worth 1998, pet. ref'd) ........................................................................................ 18

*Texas Dep't of Transportation v. Barber,*
111 S.W.3d 86 (Tex. 2003) .......................................................................................... 11

*Turner Broadcasting System v. Federal Communications Comm'n,*
512 U.S. 622 (1994) ........................................................................................................ 7

*United States v. Abel,*
469 U.S. 45 (1984) ........................................................................................................ 16

*United States v. Lanier,*
520 U.S. 259 (1997) ...................................................................................................... 28

*United States v. Salerno,*
481 U.S. 739 (1987) ...................................................................................................... 30

*United States v. Williams,*
553 U.S. 285 (2008) ...................................................................................................... 30

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
455 U.S. 489 (1982) ................................................................................................. 20, 23

*Virginia v. Hicks,*
539 U.S. 113 (2003) ...................................................................................................... 23

*Ward v. Rock Against Racism,*
491 U.S. 781 (1989) .............................................................................................. 7, 12, 30

*Washington State Grange v. Washington State Republican Party,*
552 U.S. 442 (2008) ...................................................................................................... 30

*Webb v. State,*
991 S.W.2d 408 (Tex. App.—
Houston [14th Dist.] 1999, pet. ref'd) ........................................................................ 19

ix

*Willis v. State,*
  790 S.W.2d 307 (Tex. Crim. App. 1990) ........................................................ 8

*Wisconsin v. Mitchell,*
  508 U.S. 476 (1993) .................................................................................... 17


**STATUTES**


TEX. CIV. PRAC. & REM. CODE ANN. § 125.064 (West 2014).................................... 36

TEX. CODE CRIM. PROC. ANN. art. 42.0197 (West 2014).................................... 36

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(a)(3) (West 2014)................................ 36

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 13E (West 2014)................................ 36

TEX. CODE CRIM. PROC. ANN. art. 61.02 et seq. (West 2014)................................ 36

TEX. FAM. CODE ANN. § 54.0491 (West 2014)..................................................... 36

TEX. GOV'T CODE ANN. § 311.011(a) (West 2014) ............................................21, 24, 31

TEX. GOV'T CODE ANN. § 311.021 (West 2014)..................................................... 22

TEX. GOV'T CODE ANN. § 421.082(e) (West 2014)................................................ 36

TEX. GOV'T CODE ANN. § 499.051 (West 2014).................................................... 36

TEX. GOV'T CODE ANN. § 508.227 (West 2014).................................................... 37

TEX. GOV'T CODE ANN. § 772.007 (West 2014).................................................... 37

TEX. PENAL CODE ANN. § 1.02 (West 2014)........................................................ 23

TEX. PENAL CODE ANN. § 1.05 (West 2014)........................................................ 23

TEX. PENAL CODE ANN. § 1.05(a) (West 2014) .................................................... 28

TEX. PENAL CODE ANN. § 15.031(e) (West 2014) ................................................ 37

TEX. PENAL CODE ANN. § 46.02(a-1)(2)(C) (West 2014) .....................................passim

TEX. PENAL CODE ANN. § 71.01(d) (West 2014)..................................................passim

TEX. PENAL CODE ANN. § 71.02 (West 2014)....................................................... 37

TEX. PENAL CODE ANN. § 71.021 (West 2014)..................................................... 37

TEX. PENAL CODE ANN. § 71.022 (West 2014)..................................................... 37

TEX. PENAL CODE ANN. § 71.023 (West 2014)..................................................... 37

TEX. PENAL CODE ANN. § 71.028 (West 2014)..................................................... 37

TEX. TRANSP. CODE ANN. § 521.4565(b) (West 2014)......................................................... 37

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A) ................................................................................................ ii

TEX. R. APP. P. 39.1.................................................................................................................. i

TEX. R. APP. P. 9.4(g) .............................................................................................................. i

**CONSTITUTIONAL PROVISIONS**

TEX. CONST. art. I, § 23 ........................................................................................................... 8

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

In cause number 1914785, the appellant was charged with the misdemeanor offense of unlawfully carrying a weapon as a member of a criminal street gang. In cause number 1969753, the appellant filed an application for a pre-trial writ of habeas corpus, in which he claimed that the statute providing the basis for his prosecution was facially unconstitutional (C.R. 4-15, 156-70, 212-27). The trial court denied relief on the appellant's application for a pre-trial writ of habeas corpus (C.R. 304-05; R.R. III-4). A written notice of appeal was timely filed (C.R. 306-07).

──────────◆──────────

## STATEMENT OF FACTS

The State challenges all factual assertions in the appellant's brief and presents its account of the facts within its reply to the appellant's points of error.

──────────◆──────────

## SUMMARY OF THE ARGUMENT

To the extent that any of the appellant's constitutional challenges in this case are in fact "as applied" challenges to the statute, and to the extent that any of the appellant's challenges are inappropriately raised as facial challenges to the statute, they

are not properly presented by way of an application for a pre-trial writ of habeas corpus. They would not have been properly before the trial court, and they are not properly before this Court by way of an interlocutory appeal.

Section 46.02(a-1) of the Penal Code does not regulate expressive activity, but instead prohibits the carrying of a weapon in vehicles and watercraft under certain circumstances. The statute does not prohibit being a member of a "criminal street gang." The statute does not prohibit wearing or displaying common identifying signs or symbols. The statute does not even prohibit being a member of a group of persons who continuously or regularly associate in the commission of criminal activities. The State's interest in suppressing and prosecuting violent crime is nevertheless sufficiently important, such that any incidental limitation on First Amendment freedoms is justified.

Section 46.02(a-1)(2)(C) does not reach a substantial amount of constitutionally protected conduct. Therefore, the appellant's overbreadth challenge must fail. The appellant's overbreadth challenge is also founded upon strained or improper interpretations of Sections 46.02(a-1)(2)(C) and 71.01(d).

The appellant has failed to show that Sections 46.02(a-1)(2)(C) and 71.01(d) are unconstitutionally vague in all of their applications. These statutes clearly and unambiguously prevent a person from carrying a handgun in his vehicle if that person is one of "three or more persons" "having a common identifying sign or symbol or an

identifiable leadership" "who continuously or regularly associate in the commission of criminal activities."

———————◆———————

## PRE-TRIAL WRIT OF HABEAS CORPUS

An application for a pre-trial writ of habeas corpus, followed by an interlocutory appeal, is an "extraordinary remedy," and appellate courts have been careful to ensure that a pre-trial writ is not misused to secure pre-trial appellate review of matters that in actual fact should not be put before appellate courts at the pre-trial stage. Consequently, whether a claim is even cognizable on pre-trial habeas corpus is a threshold issue that should be addressed before the merits of the claim may be resolved. If a non-cognizable claim is resolved on the merits in a pre-trial habeas corpus appeal, then the pre-trial writ has been misused. *Ex parte Ellis,* 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (citing *Ex parte Doster,* 303 S.W.3d 720, 724 (Tex. Crim. App. 2010); *Ex parte Smith,* 178 S.W.3d 797, 801 (Tex. Crim. App. 2005)).

In that respect, an application for a pre-trial writ of habeas corpus can be used to bring a facial challenge to the constitutionality of the statute that defines the offense, but may not be used to advance an "as applied" challenge. *Ex parte Ellis,* 309 S.W.3d at 79 (citing *Ex parte Weise,* 55 S.W.3d 617, 620-21 (Tex. Crim. App. 2001)). If a claim designated as a facial challenge is in fact an "as applied" challenge, courts

3

should refuse to consider the merits of the claim. *Ex parte Ellis,* 309 S.W.3d at 80. A facial challenge to the constitutionality of a statute is difficult to mount successfully because the challenger must establish that no set of circumstances exists under which the statute is valid. *In re Shaw,* 204 S.W.3d 9, 14 (Tex. App.—Texarkana 2006, pet. ref'd).

Throughout his brief, the appellant purports to be raising a facial challenge to TEX. PENAL CODE ANN. § 46.02(a-1)(2)(C) (West 2014). To the extent that any of the appellant's challenges are in fact "as applied" challenges to the statute, and to the extent that any of the appellant's challenges are inappropriately raised as facial challenges to the statute, they are not properly presented by way of an application for a pre-trial writ of habeas corpus. They would not have been properly before the trial court, and they are not properly before this Court by way of an interlocutory appeal. If that is the case with regard to any of the challenges that the appellant has raised, this Court need not and should not address the merits of the particular challenge.

————————◆————————

## REPLY TO POINT OF ERROR ONE

Under his first point of error, the appellant claims, "The trial court erred in denying appellant's First Amendment challenge to Penal Code § 46.02(a-1)(2)(C)."

4

The appellant claims that Section 46.02(a-1)(2)(C) regulates inherently expressive content (appellant's brief at 19-20). The State disagrees. Section 46.02(a-1) provides:

> A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun in a motor vehicle or watercraft that is owned by the person or under the person's control at any time in which:
>
> (1) the handgun is in plain view; or
>
> (2) the person is:
>
>> (A) engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic or boating;
>>
>> (B) prohibited by law from possessing a firearm; or
>>
>> (C) a member of a criminal street gang, as defined by Section 71.01

TEX. PENAL CODE ANN. § 46.02(a-1) (West 2014). Section 71.01 of the Penal Code defines "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX. PENAL CODE ANN. § 71.01(d) (West 2014). Even a cursory reading of the appellant's brief reveals that he is largely challenging the definition of "criminal street gang" as it is incorporated into Section 46.02(a-1)(2)(C).

5

## Section 46.02(a-1)(2)(C) is not a regulation of speech or expression and, at worst, only permits incidental limitations on First Amendment freedoms.

A reading of the plain text of Section 46.02(a-1) reveals that it does not regulate expressive activity, whether protected by the First Amendment or not. Rather, the statutory provision is plainly directed at prohibiting the carrying of a weapon in vehicles and watercraft under certain circumstances. The statute does not prohibit being a member of a "criminal street gang." The statute does not prohibit wearing or displaying common identifying signs or symbols. The statute does not even prohibit being a member of a group of persons who continuously or regularly associate in the commission of criminal activities. The statute plainly only prohibits the carrying of a handgun in a vehicle or watercraft under certain circumstances.

The appellant has not identified or claimed a First Amendment right to carry a handgun in a motor vehicle. The appellant has only challenged that portion of the statute that makes it illegal for a person to carry a handgun in a vehicle when that person is a member of a "criminal street gang." Even if one concedes that membership in a "criminal street gang," as currently defined by the Texas Legislature, is arguably covered by the First Amendment (which concession the State does not make), the appellant's First Amendment challenge to the statute would have to fail.

The United States Supreme Court has held that when "speech" and "non-speech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the non-speech element can justify

incidental limitations on First Amendment freedoms.  Such a government regulation is sufficiently justified

- if it is within the constitutional power of the Government;

- if it furthers an important or substantial governmental interest;

- if the governmental interest is unrelated to the suppression of free expression; and

- if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien v. United States,* 391 U.S. 367, 376-77 (1968).

Under this test, the regulation at issue need not be the least speech-restrictive means of advancing the Government's interests.  The requirement of narrow tailoring is satisfied if the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation.  The regulation is considered "narrowly tailored" for intermediate-scrutiny purposes, so long as the means chosen are not substantially broader than necessary to achieve the Government's interest. *Ex parte Thompson,* 442 S.W.3d 325, 345 (Tex. Crim. App. 2014) (citing *Turner Broadcasting System v. Federal Communications Comm'n,* 512 U.S. 622, 662 (1994); *Ward v. Rock Against Racism,* 491 U.S. 781, 797-800 (1989)).

There is no doubt that the Legislature has the power to enact such laws so as to prevent crime or the occasion for crime. *Collins v. State,* 501 S.W.2d 876, 877 (Tex.

7

Crim. App. 1973); *Ex parte Williams,* 786 S.W.2d 781, 783 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd); TEX. CONST. art. I, § 23.  *See also Willis v. State,* 790 S.W.2d 307, 314 (Tex. Crim. App. 1990).  The Government's interest in bringing to trial an individual accused of a serious crime is also important, as is the Government's need to protect through application of the criminal law the basic human need for security.  *Sell v. United States,* 539 U.S. 166, 180 (2003).

Courts routinely are confronted with cases in which gang members have utilized firearms and vehicles in order to carry out violent crime.[1]  A statute criminalizing a criminal gang member's possession of a firearm while he was riding in a vehicle should be very effective in preventing many of these violent crimes.  These important government interests in suppressing and prosecuting crime are also unrelated to any exercise of free expression recognized by the First Amendment.

The Ninth Circuit Court of Appeals has held that gun possession can be speech where there is "an intent to convey a particularized message, and the likelihood [is] great that the message would be understood by those who viewed it." Typically a person possessing a gun has no intent to convey a particular message, nor

---

[1]  *See, e.g., Colbert v. State,* 108 S.W.3d 316, 317 (Tex. Crim. App. 2003); *Miranda-Canales v. State,* 368 S.W.3d 870, 871 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Jefferson v. State,* 346 S.W.3d 254 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Cantu v. State,* 339 S.W.3d 688, 689 (Tex. App.—Fort Worth 2011, no pet.); *Dominguez v. State,* 125 S.W.3d 755, 759-60 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Pettigrew v. State,* 999 S.W.2d 810, 811 (Tex. App.—Tyler 1999, no pet.); *Saenz v. State,* 976 S.W.2d 314, 318 (Tex. App.—Corpus Christi 1998, no pet.); *Juarez v. State,* 961 S.W.2d 378, 380 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *Cornejo v. State,* 917 S.W.2d 480 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

is any particular message likely to be understood by those who view it. *Nordyke v. King,* 319 F.3d 1185, 1190 (9th Cir. 2003) (quoting *Spence v. Washington,* 418 U.S. 405, 410-11 (1974)).

In *Nordyke v. King,* the court rejected a facial First Amendment challenge to a firearm possession ordinance because the ordinance was not directed narrowly and specifically at expression or conduct commonly associated with expression and because possession of a gun is not commonly associated with expression. *Nordyke,* 319 F.3d at 1190. *Cf. also Scott v. State,* 322 S.W.3d 662, 669-70 (Tex. Crim. App. 2010) (offense of telephone harassment did not implicate First Amendment, even if defendant's conduct included spoken words, because conduct was accompanied by invasion of other person's privacy and intent to inflict emotional distress).

The State contends that its interest in suppressing and prosecuting violent crime is sufficiently important, such that any incidental limitation on First Amendment freedoms is justified. And Section 46.02(a-1)(2)(C) promotes those substantial governmental interests, which would be achieved less effectively absent the statute. The statute is also not substantially broader than necessary to achieve those governmental interests. The appellant's First Amendment challenge to Section 46.02(a-1)(2)(C) should, therefore, be rejected.

**Even viewed as a regulation of speech or expression, Section 46.02(a-1)(2)(C) is content-neutral.**

For his part, the appellant has not analyzed the **entirety** of Section 46.02(a-1)(2)(C) under the First Amendment, but has instead largely challenged only that **portion** of the statute that incorporates the definition of "criminal street gang" under Section 71.01 of the Penal Code. But as noted above, Section 46.02(a-1)(2)(C) does not prohibit being a member of a "criminal street gang" or any other kind of gang. The statute does not prohibit wearing or displaying common identifying signs or symbols. The statute does not even prohibit being a part of a group of persons who continuously or regularly associate in the commission of criminal activities. Nevertheless, even if the State were to join issue with the appellant in this limited consideration of the statute, the State would still have to disagree with the merits of the appellant's First Amendment challenge.

In the First Amendment context, there are two levels of scrutiny: strict scrutiny and intermediate scrutiny. Strict scrutiny applies when a statute constitutes a content-based regulation of expression. Under the strict scrutiny test, a regulation of expression may be upheld only if it is narrowly drawn to serve a compelling government interest. In this context, a regulation is "narrowly drawn" if it uses the least restrictive means of achieving the government interest. *Ex parte Thompson,* 442 S.W.3d at 344. A law is considered to be content-based, and thus subject to the strict scrutiny test, if it distinguishes favored speech from disfavored speech on the basis of

10

the ideas or views expressed. If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based. *Ex parte Thompson,* 442 S.W.3d at 345.

In some situations, however, a regulation can be deemed content-neutral on the basis of the government interest that the statute serves, even if the statute appears to discriminate on the basis of content. These situations involve government regulations aimed at the "secondary effects" of expressive activity. In this type of situation, a regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages, but not others. The government regulation at issue need only be justified without reference to the content of the regulated speech. *Ex parte Thompson,* 442 S.W.3d at 345.

As noted above, Section 46.02(a-1)(2)(C) does not directly regulate any speech or expression. It arguably only indirectly or secondarily regulates expression by criminalizing the possession of a handgun in a vehicle while a person is possibly engaged in that expression. This statute is directed at the crime that occurs when a handgun is possessed and utilized from the relative safety and mobility of a moving vehicle. The statute should, therefore, be viewed as content-neutral with regard to the expression that it may incidentally regulate. *See Texas Dep't of Transportation v. Barber,* 111 S.W.3d 86, 93-94 (Tex. 2003) (citing *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48 (1986); *Asgeirsson v. Abbott,* 696 F.3d 454, 460 (5th Cir. 2012). On this basis as

11

well, the appellant's First Amendment challenge to Section 46.02(a-1)(2)(C) should, therefore, be rejected.

## Section 46.02(a-1)(2)(C) would even survive a challenge if viewed as a content-based regulation.

In *Martinez v. State,* a trial court imposed an injunction against members of a criminal street gang, **directly** preventing them from engaging in various activities, including:

> 16.  Using or making words, phrases, physical gestures, or symbols, commonly known as gang hand signs or engaging in other forms of communication which the Defendant knows, describes, refers, or identifies members of the combination, or wearing clothes that particularly identify membership within the combination.

*Martinez v. State,* 323 S.W.3d 493, 497 (Tex. Crim. App. 2010). In addressing the defendant's First Amendment challenge to this particular portion of the injunction, the Court of Criminal Appeals stated, "Our first task is to decide whether provision sixteen is a content-neutral or a content-based time, place, and manner restriction." *Martinez,* 323 S.W.3d at 504 (citing *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992); *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *Boos v. Barry,* 485 U.S. 312, 319-20 (1988)). "Whether the provision is content-neutral or content-based dictates the level of scrutiny that we will apply in deciding whether provision sixteen violates [the defendant's] First Amendment rights." *Martinez,* 323 S.W.3d at 504-05 (citing *Madsen*

*v. Women's Health Center, Inc.,* 512 U.S. 753, 763-64 (1994); *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983)).

A content-based regulation focuses on the content of speech and its impact on others. In that respect, the *Martinez* court noted that provision sixteen in the trial court's injunction banned the particular message associated with, and attributable to, the display of gang hand signs and clothing. Consequently, the court found the particular provision of the injunction to be content-based. *Martinez,* 323 S.W.3d at 505. And the appellant has certainly made a strong argument based in part upon *Martinez* that Section 46.02(a-1)(2)(C) is a content-based regulation (appellant's brief at 20-21). As contrasted with provision sixteen of the trial court's injunction in *Martinez,* however, Section 46.02(a-1)(2)(C) does not prohibit being a member of a "criminal street gang." The statute does not prohibit wearing or displaying common identifying signs or symbols. The statute does not even prohibit being a part of a group of persons who continuously or regularly associate in the commission of criminal activities. With regard to expression, the statute is content-neutral.

In any event, in *Martinez,* even though the Court of Criminal Appeals found the particular provision at issue in that case to be content-based, the court nevertheless found that the provision was narrowly tailored to serve a compelling state interest and that, therefore, the strict scrutiny standard had been satisfied. *Martinez,* 323 S.W.3d at 505. "The State has a recognizable compelling interest in ensuring the safety of

13

citizens . . . by preventing crime, and the judge's order in this case was issued to protect that interest." *Martinez,* 323 S.W.3d at 506.

Likewise, even if Section 46.02(a-1)(2)(C) were to be viewed as content-based in some fashion, the State has a compelling interest in ensuring the safety of its citizens by preventing crime. The *Martinez* court also held that the provision at issue in that case

> was narrowly tailored to serve the State's compelling interest. It prohibited a particular type of conduct and communication based on the relevant circumstances. The making of hand gang signs and the wearing of gang clothing are a primary feature of street gangs. A street gang is identified first and foremost through its hand signs and attire; it puts the public, and most of all, rival gangs, on notice of its existence and presence. Rivalries exist between street gangs, and the use of gang hand signs and clothing, the identifier, contributes to the onset of violence between rival gangs. Additionally, gang hand signs and clothing are used to promote a criminal street gang's overall objective of engaging in gang activity. What is lawful on its own, in this instance, is inextricably intertwined with the gang's unlawful exploits. Specifically, as noted above, the objectives of the [defendant's] gang, as determined by the district court judge, include some of the following penal code offenses: organized criminal activity, terroristic threats, criminal trespass, disorderly conduct, criminal mischief, unlawful possession of controlled substances, and coercing, soliciting, and inducing gang membership. Therefore, as the judge implicitly found, gang hand signs and clothing represent an integral part of [the gang's] illegal exploits, and prohibiting gang hand signs and the wearing of gang clothing was one essential tool in eliminating the gang's public-nuisance activities.

*Martinez,* 323 S.W.3d at 506 (citations omitted). Similarly, Section 46.02(a-1)(2)(C) was enacted to protect the State's compelling interest in ensuring the safety of its citizens by preventing crime. Preventing an identified criminal gang member from possessing a handgun while traveling in a vehicle is critical to helping prevent the violent crime

14

that so often occurs when these volatile combinations exist. On this basis as well, the appellant's First Amendment challenge to Section 46.02(a-1)(2)(C) should, therefore, be rejected.

**Section 46.02(a-1)(2)(C) does not represent an invalid restriction of a person's freedom of association.**

The appellant also claims that Section 46.02(a-1)(2)(C) implicates First Amendment protection because it restricts a person's freedom of association and assembly (appellant's brief at 19). Once again, the State disagrees. *See City of Chicago v. Morales,* 527 U.S. 41, 52-53 (1999) (plurality opinion) (finding that anti-loitering ordinance directed at criminal street gangs did not impact First Amendment freedom of association or assembly).

The First Amendment certainly protects an individual's right to join groups and associate with others holding similar beliefs. *Dawson v. Delaware,* 503 U.S. 159, 163-64 (1992) (citing *Aptheker v. Secretary of State,* 378 U.S. 500, 507 (1964); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460 (1958)). But the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations simply because those beliefs and associations are protected by the First Amendment. *Dawson,* 503 U.S. at 165.

In *Dawson,* the United States Supreme Court held that, because the prosecution did not prove that the Aryan Brotherhood had committed any unlawful or violent

acts, or had even endorsed such acts, Aryan Brotherhood evidence was not relevant to help prove any aggravating circumstance in that particular case. But the Court did state that associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example, might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future. Other evidence concerning a defendant's associations might be relevant in proving other aggravating circumstances. *Dawson,* 503 U.S. at 166.

So the United States Supreme Court has recognized that admission of evidence of membership in a gang whose primary purpose is illegal activity is not barred by the First Amendment. *Aguilar v. State,* 29 S.W.3d 268, 270 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Dawson v. Delaware,* 503 U.S. 159 (1992); *United States v. Abel,* 469 U.S. 45 (1984); *Barclay v. Florida,* 463 U.S. 939 (1983)). Such evidence may be admissible if it is shown to be "relevant" to the issues involved in the case. *Mason v. State,* 905 S.W.2d 570, 576-77 (Tex. Crim. App. 1995).

In this case, the appellant has presented a facial challenge to Section 46.02(a-1)(2)(C), so the State has not yet had the opportunity to prove that the appellant is a "member" of a "criminal street gang," as set forth within the statute and as defined in Section 71.01(d). If the State fails to prove that beyond a reasonable doubt, the appellant would be entitled to an acquittal. If the State fails to prove that the gang of which the appellant was a member was a "criminal" street gang, the evidence of the

16

appellant's gang membership would likewise be irrelevant. The State's evidence would suffer from the same shortcomings as the limited evidence presented by the prosecution in *Dawson.* But as this is a pre-trial facial challenge to Section 46.02(a-1)(2)(C), the occasion for presenting such evidence has not yet arisen.

Nevertheless, such testimony is now common in criminal cases. Even speech or expression protected by the First Amendment may be admitted against a defendant at the guilt/innocence stage of trial if the speech is relevant to issues presented at the guilt/innocence stage. *Goldberg v. State,* 95 S.W.3d 345, 374 n.7 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Wisconsin v. Mitchell,* 508 U.S. 476, 488 (1993) ("The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like.").

Texas courts have previously recognized that testimony that certain of a defendant's tattoos had distinctive meanings and were common in particular gangs supplied sound evidence of the defendant's gang membership. *Garcia v. State,* 239 S.W.3d 862, 867 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Beasley v. State,* 902 S.W.2d 452, 454 (Tex. Crim. App. 1995) (membership was established by defendant's wearing of gang colors and his association with gang members, not by witness testifying that he or she knew that defendant was in gang); *Anderson v. State,* 901 S.W.2d 946, 948 (Tex. Crim. App. 1995) (police officer testified that he knew

17

defendant was gang member because he was in company of gang members and wore gang tee shirt); *Stevenson v. State,* 963 S.W.2d 801, 803-04 (Tex. App.—Fort Worth 1998, pet. ref'd) (police officer testified that defendant's tattoo had significance related to gang activity, and that defendant used phrase "what's up, cuz?" which has distinctive meanings in same gang); *Cabrera v. State,* No. 01-05-00450-CR, 2006 WL 952410, *2 (Tex. App.—Dallas, Mar. 30, 2006, pet. ref'd) (testimony from police officer that distinctive notches shaved into defendant's eyebrows, visible in book-in photograph, were common among members of certain gangs, from defendant's friend's mother that defendant talked about getting teardrop tattoo, which had gang meaning that tattooed person had killed someone, and that defendant associated with gang members, was enough to show gang membership)).

The appellant claims that Section 46.02(a-1)(2)(C) "seeks criminal sanctions for those associated with a particular group's sign or symbol . . ." (appellant's brief at 19). The State disagrees. Section 46.02(a-1)(2)(C) in no way prevents someone from being a member of a "criminal street gang." The statute does not prohibit wearing or displaying common identifying signs or symbols. The statute does not even prohibit being a part of a group of persons who continuously or regularly associate in the commission of criminal activities. The statute is a content-neutral regulation of the right to possess a weapon in a vehicle under certain circumstances. The statute furthers an important governmental interest in the prevention and suppression of crime, and those governmental interests are unrelated to the suppression of free

18

expression.  The appellant's First Amendment challenge to the statute should, therefore, be rejected.  The appellant's first point of error should be overruled.

————————◆————————

## REPLY TO POINT OF ERROR TWO

Under his second point of error, the appellant claims, "The trial court erred in denying appellant's challenge to Penal Code § 46.02(a-1)(2)(C) because it is unconstitutionally overbroad."  To vindicate First Amendment interests and prevent a chilling effect on the exercise of First Amendment freedoms, the overbreadth doctrine allows a statute to be invalidated on its face, even if it has legitimate application, and even if the defendant before the court has suffered no constitutional violation.  The overbreadth doctrine is "strong medicine" that should be employed "sparingly" and "only as a last resort."  The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Ex parte Ellis,* 309 S.W.3d at 90-91 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 612-15 (1973)).  *See also Ex parte Thompson,* 442 S.W.3d at 349-50.

Consequently, a reviewing court's task is to determine whether the particular statute at issue reached a substantial amount of constitutionally protected conduct.  If the statute does not, then the overbreadth challenge must fail.  *Webb v. State,* 991 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (citing *Village of*

19

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 (1982)). A statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. *In re Shaw,* 204 S.W.3d at 15 (citing *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800 (1984)).

One of the strongest arguments that the State has uncovered in support of the rejection of the appellant's overbreadth challenge comes from one of the cases upon which the appellant heavily relies in support of his third point of error. In *City of Chicago v. Morales,* 527 U.S. 41, 45-46 (1999), a case in which in which the United States Supreme Court was confronted with the validity of a Chicago ordinance that prohibited criminal street gang members from loitering together in a public place. In briefly rejecting the overbreadth challenge to the ordinance, a plurality of the Court stated,

> [T]the law does not have a sufficiently substantial impact on conduct protected by the First Amendment to render it unconstitutional. The ordinance does not prohibit speech. Because the term "loiter" is defined as remaining in one place "with no apparent purpose," it is also clear that it does not prohibit any form of conduct that is apparently intended to convey a message. By its terms, the ordinance is inapplicable to assemblies that are designed to demonstrate a group's support of, or opposition to, a particular point of view. Its impact on the social contact between gang members and others does not impair the First Amendment "right of association" that our cases have recognized.

*Morales,* 527 U.S. at 52-53 (plurality opinion) (citations omitted). Likewise, Section 46.02(a-1)(2)(C) of the Penal Coe does not prohibit being a member of a "criminal street gang." The statute does not prohibit wearing or displaying common identifying

20

signs or symbols, and it does not prohibit being part of a group with an identifiable leadership. The statute does not even prohibit being a part of a group of persons who continuously or regularly associate in the commission of criminal activities. The statute also does not reach a substantial amount of constitutionally protected conduct. Therefore, the appellant's overbreadth challenge must fail.

## The Proper Manner of Construing Section 46.02(a-1)(2)(C)

When construing a statute, a court should first look to its literal language to ascertain its meaning. If the language of the statute is plain, then the court should interpret the statute according to that plain language. However, if the language of the statute is ambiguous or the plain meaning would lead to absurd results, then the court should examine extra-textual sources to discern the meaning of the statute. Courts employ these rules of statutory construction to fulfill a court's constitutional duty to construe the meaning of a particular statute in the way intended by the legislators who enacted the law. *Brown v. State,* 98 S.W.3d 180, 183 (Tex. Crim. App. 2003); *Boykin v. State,* 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991). *See also* TEX. GOV'T CODE ANN. § 311.011(a) (West 2014).

This Court should also presume that the Legislature intended compliance with the United States and Texas Constitutions. This Court should also presume that the Legislature intended that the entire statute be effective, that the Legislature intended a just and reasonable result, and that the Legislature intended a result that was feasible

21

of execution. TEX. GOV'T CODE ANN. § 311.021 (West 2014). *See also Ex parte Spann,* 132 S.W.3d 390, 393 (Tex. Crim. App. 2004); *State v. Edmond,* 933 S.W.2d 120, 124 (Tex. Crim. App. 1996).

When construing a provision of the Texas Penal Code, courts should also keep in mind Section 1.02 of the Penal Code which provides:

> The general purposes of this code are to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those individual or public interests for which state protection is appropriate. To this end, the provisions of this code are intended, and shall be construed, to achieve the following objectives:
>
> (1) to insure the public safety through:
>
> > (A) the deterrent influence of the penalties hereinafter provided;
> >
> > (B) the rehabilitation of those convicted of violations of this code; and
> >
> > (C) such punishment as may be necessary to prevent likely recurrence of criminal behavior;
>
> (2) by definition and grading of offenses to give fair warning of what is prohibited and of the consequences of violation;
>
> (3) to prescribe penalties that are proportionate to the seriousness of offenses and that permit recognition of differences in rehabilitation possibilities among individual offenders;
>
> (4) to safeguard conduct that is without guilt from condemnation as criminal;
>
> (5) to guide and limit the exercise of official discretion in law enforcement to prevent arbitrary or oppressive treatment of persons suspected, accused, or convicted of offenses; and

(6) to define the scope of state interest in law enforcement against specific offenses and to systematize the exercise of state criminal jurisdiction.

TEX. PENAL CODE ANN. § 1.02 (West 2014). But provisions of the Texas Penal Code are not to be strictly construed. Rather, they should be construed according to the fair import of their terms, to promote justice, and to effect the objectives of the Penal Code. TEX. PENAL CODE ANN. § 1.05 (West 2014).

When confronted with an overbreadth challenge, a court should not strike down a statute as facially overbroad if its constitutionality can be preserved through a "limiting construction" capable of removing the seeming threat or deterrence to constitutionally protected expression. *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973). Every reasonable construction must be resorted to in order to save a statute from unconstitutionality. *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988); *Hooper v. California,* 155 U.S. 648, 657 (1895). *See also Virginia v. Hicks,* 539 U.S. 113, 118-19 (2003); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n.5 (1982); *Commission for Lawyer Discipline v. Benton,* 980 S.W.2d 425, 439 (Tex. 1998).

Furthermore, when confronting an overbreadth challenge, statutory provisions should not be read in isolation. Rather, the entire statute should be read as a whole and its various provisions construed accordingly. *See Rahmani v. State,* 748 S.W.2d 618, 624 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). In interpreting a

23

statute, the terms used must be read in the context in which they are used. Tex. Gov't Code Ann. § 311.011(a) (West 2014). *See also Sanchez v. State,* 995 S.W.2d 677, 684-85 (Tex. Crim. App. 1999) (holding that the term "unwelcome" applied to all proscribed forms of "sexual harassment" listed in Section 39.03(c) of the Penal Code because that construction made the most sense in the context of the overall statutory scheme).

## The appellant's overbreadth challenge is founded upon strained or improper interpretations of Section 46.02(a-1)(2)(C).

The appellant claims that Section 46.02(a-1)(2)(c) is unconstitutionally overbroad based upon the assertion that, "if three or more persons have an identifying sign or symbol, they are by definition, a 'criminal street gang'" (appellant's brief at 27) (referencing language in Section 71.01(d)). In making this patently absurd claim, the appellant apparently believes that the Texas Legislature has defined two (or perhaps three) groups of people that could comprise a "criminal street gang": (1) three or more persons having a common identifying sign or symbol, or (2) three or more persons having an identifiable leadership who continuously or regularly associate in the commission of criminal activity (appellant's brief at 27). That is not what the Legislature has provided.

Rather, Section 71.01 of the Penal Code defines "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal

24

activities." TEX. PENAL CODE ANN. § 71.01(d) (West 2014). Stated another way, the Legislature has defined a "criminal street gang" as (1) three or more persons (2) having (2a) a common identifying sign or symbol or (2b) an identifiable leadership (3) who continuously or regularly associate in the commission of criminal activities.[2] This last phrase is the most important part of the definition of "*criminal* street gang." To remove it from any part of the definition would be absurd and clearly inconsistent with the Legislature's intent.

Contrary to the appellant's assertions, it is not the State's intention that the trial court or this Court add language to the Legislature's definition of "criminal street gang." It is not even the State's intention that this Court add the word "and." What this Court should do is presume that the Legislature intended compliance with the United States Constitution, and this Court should also presume that the Legislature intended that the entire statute be effective. The fair import of the terms in these statutes reveal that the Legislature intended that the object of this particular weapons offense be someone who was (1) a member of (2) a group of three or more persons (3) having (3a) a common identifying sign or symbol or (3b) an identifiable leadership (4) who continuously or regularly associate in the commission of criminal activities.

---

[2] By identifying the various phrases within the statute, the State is not "bifurcating" the statute into two separate statutes, as claimed by the appellant (appellant's brief at 28). But the statute is obviously made up of several individual phrases, each of which should be given their appropriate meaning within the context of the statute as a whole.

The appellant claims that the State's interpretation of the definition of "criminal street gang" would render the Republican Party a "criminal street gang" if a *select few* ("hypothetical group of") members of the Republican Party were continuously or regularly associated in the commission of voter fraud (appellant's brief at 30-31). This is pretty silly. That is not what the definition states, and that is not even the State's interpretation of the definition. The appellant's claim would only be justified if *every single* member of the Republican Party continuously or regularly associated in the commission of voter fraud (and assuming that voter fraud always fit within the definition of "criminal activity").

And in that instance, a court might wish to deem that "Republican Party" a "criminal street gang" based upon the plain language of the Legislature's definition. That may not be what the Legislature intended, but it would fit within the Legislature's definition. It would not be an absurd application of the statute (although it would certainly be unusual), and—more to the point—it would not render the statute overbroad. Moreover, as noted above, a statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. *In re Shaw,* 204 S.W.3d at 15 (citing *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800 (1984)).

The appellant claims that the term "member" is unconstitutionally overbroad because the term "member" is not defined in Section 46.02(a-1)(2)(C) and thereby "does not require the member to know of the criminal street gang's illicit activities,

26

nor act with a specific intent to further the gang's unlawful goals." (appellant's brief at 35). The appellant also claims that "Section 46.02(a-1)(2)(C)'s application extends to any member of a 'criminal street gang', even those unaware of its illicit activities." (appellant's brief at 38). Under his first point of error, the appellant claims the statute "seeks criminal sanctions for those associated with a particular group's sign or symbol, **irrespective of their knowledge of, or personal involvement in, the group's lawful and unlawful activities.**" (appellant's brief at 19) (emphasis added). The State disagrees with all of these assertions.

Contrary to these repeated suggestions throughout the appellant's brief, the Legislature has not defined a "criminal street gang" as including those that merely **advocate** the commission of criminal activities (*cf.* appellant's brief at 36-37). The Legislature has instead defined a "criminal street gang" as that group of three or more persons who continuously or regularly associate in the **commission** of criminal activities. By its plain wording, the definition of "criminal street gang" requires that each member of the group of "three or more persons" "continuously or regularly associate in the commission of criminal activities."

A culpable mental state is also typically required for all criminal offenses ("criminal activities"). *See* TEX. PENAL CODE. ANN. § 6.02 (West 2014). *See also, e.g., Rivera v. State,* 363 S.W.3d 660, 667-68 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *In re Shaw,* 204 S.W.3d at 16. A person can be prosecuted under the particular statute only if he intentionally, knowingly, or recklessly carries on or about his person a

handgun while he is in his vehicle, and then only if the person is a member of a group of "three or more persons" "having a common identifying sign or symbol or an identifiable leadership" "who continuously or regularly associate in the commission of criminal activities."

The appellant also latches onto the "rule of lenity" as a means of urging this Court to adopt his strained construction of Section 46.02(a-1)(2)(C) (appellant's brief at 33). The rule of lenity seeks to ensure fair warning that conduct has been criminalized by resolving any ambiguity in a criminal statute, so that it applies only to conduct clearly covered. The rule of lenity is another name for "the canon of strict construction of criminal statutes." *Ochoa v. State,* 355 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (quoting *United States v. Lanier,* 520 U.S. 259, 266 (1997)). Unlike the rule of lenity, however, which strictly construes criminal statutes, the Texas Penal Code does not require its provisions to be strictly construed. *Ochoa,* 355 S.W.3d at 53 (citing TEX. PENAL CODE ANN. § 1.05(a) (West 2014) ("The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.")).

Assuming the rule of lenity applies (which is not altogether clear), it is "another extratextual factor for a court to consider if, and only if, a statute is ambiguous." *Ochoa,* 355 S.W.3d at 53 (quoting *Cuellar v. State,* 70 S.W.3d 815, 819 n.6 (Tex. Crim. App. 2002); *Ex parte Forward,* 258 S.W.3d 151, 154 n.19 (Tex. Crim. App. 2008) ("Even if the 'rule of lenity' applies . . . , it provides the rule of decision only when

28

both alternative choices or definitions are more-or-less equally reasonable.") (internal quotations omitted). But the statute is not ambiguous.

The fair import of the terms in Sections 46.02(a-1)(2)(C) and 71.01(d) reveal that the Legislature intended that the object of the particular weapons offense be someone who was a member of a group of three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities. This Court should not consider invalidating either of the two statutes merely because it might be possible to imagine some unconstitutional applications. Section 46.02(a-1)(2)(C) does not reach a substantial amount of constitutionally protected conduct, and the appellant's overbreadth challenge must fail. The appellant's second point of error should be overruled.

———————◆———————

## REPLY TO POINT OF ERROR THREE

Under his third point of error, the appellant claims, "The trial court erred in denying appellant's challenge to Penal Code § 46.02(a-1)(2)(c) because it is unconstitutionally vague." If First Amendment freedoms are not implicated, a facial vagueness challenge can succeed only if it is shown that the law is unconstitutionally vague in all of its applications. *Ex parte Ellis,* 309 S.W.3d at 80 (citing *Washington State*

29

*Grange v. Washington State Republican Party,* 552 U.S. 442, 449 (2008); *United States v. Salerno,* 481 U.S. 739, 745 (1987); *Sanchez v. State,* 995 S.W.2d 677, 683 (Tex. Crim. App. 1999)).

When First Amendment freedoms are implicated, a criminal law must: (1) be sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what is prohibited, (2) establish determinate guidelines for law enforcement, and (3) be sufficiently definite to avoid chilling protected expression. When a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid, even if the law has some valid application. *Ex parte Ellis,* 309 S.W.3d at 86 (citing *Long v. State,* 931 S.W.2d 285, 287-88 (Tex. Crim. App. 1996)). "But perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ex parte Ellis,* 309 S.W.3d at 86 (citing *United States v. Williams,* 553 U.S. 285, 304 (2008); *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989)).

Furthermore, as is the case with an overbreadth challenge, when confronting a vagueness challenge, statutory provisions should not be read in isolation. Rather, the entire statute should be read as a whole and its various provisions construed accordingly. *See Rivera,* 363 S.W.3d at 673; *Ex parte Ellis,* 279 S.W.3d 1, 21 (Tex. App.—Austin 2008), *aff'd,* 309 S.W.3d 71 (Tex. Crim. App. 2010); *Flores v. State,* 33 S.W.3d 907, 921 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). In interpreting a statute, the terms used must be read in the context in which they are used. *Bynum v.*

30

*State,* 767 S.W.2d 769, 774 (Tex. Crim. App. 1989); Tex. Gov't Code Ann. §
311.011(a) (West 2014).


### *Lanzetta v. New Jersey*

In support of his vagueness challenge, the appellant relies upon *Lanzetta v. New Jersey,* 306 U.S. 451, 452 (1939), in which the United States Supreme Court was confronted with the validity of a New Jersey statute that provided, "Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster . . ." Every violation was punishable by fine not exceeding $10,000.00 or imprisonment not exceeding 20 years, or both. In this New Jersey statute, the term "gang" was only (impliedly) defined as "consisting of two or more persons." *Lanzetta,* 306 U.S. at 453.

The Court in *Lanzetta*, not surprisingly, found his prosecution under this statute to be a violation of the defendant's right to due process. By contrast, however, "criminal street gang" has been defined by the Texas Legislature as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX. PENAL CODE ANN. § 71.01(d) (West 2014).

The appellant appears to primarily rely upon *Lanzetta* because, near the very end of the Court's opinion, the Court stated, "The enactment employs the expression, 'known to be a member'. It is ambiguous." *Lanzetta,* 306 U.S. at 458. The Court went on to state:

> There immediately arises the doubt whether actual or putative association is meant. If actual membership is required, that status must be established as a fact, and the word "known" would be without significance. If reputed membership is enough, there is uncertainty whether that reputation must be general or extend only to some persons. And the statute fails to indicate what constitutes membership or how one may join a "gang".

*Lanzetta,* 306 U.S. at 458. In this very brief analysis, the Court seemed to have more problem with the word "known" than it did with the word "member." But the primary holding of the Court was not directed at the phrase "known to be a member," but rather at the undefined terms "gang" and "gangster."

In any event, Section 71.01(d) provides much more guidance as to what constitutes a "criminal street gang," and, therefore, who is a "member" of a "criminal street gang"—one of the "three or more persons" "having a common identifying sign or symbol or an identifiable leadership" "who continuously or regularly associate in the commission of criminal activities." And Section 46.02(a-1)(2)(C) is not directed at a person who is known or reputed to be a member of a criminal street gang, but a person who **"*is*" *in fact*** a member of a criminal street gang.

### City of Chicago v. Morales

In support of his vagueness challenge, the appellant also relies upon the partial plurality opinion in *City of Chicago v. Morales,* 527 U.S. 41, 45-46 (1999), in which the United States Supreme Court was confronted with the validity of a Chicago ordinance that prohibited criminal street gang members from loitering together in a public place. Commission of the offense created by the ordinance involved four predicates.

- First, the police officer must reasonably believe that at least one of the two or more persons present in a public place was a criminal street gang member.

- Second, the persons must be loitering, which the ordinance defined as remaining in any one place with no apparent purpose.

- Third, the officer must then order all of the persons to disperse and remove themselves from the area.

- Fourth, a person must disobey the officer's order.

If any person, whether a gang member or not, disobeyed the officer's order, that person was guilty of violating the ordinance. The Chicago Police Department promulgated a general order to govern the ordinance's enforcement. The general order

- confined the authority to arrest gang members who violated the ordinance to sworn members of the Gang Crime Section and certain other designated officers;

33

- established detailed criteria for defining street gangs and membership in such gangs;

- provided that the ordinance would only be enforced in areas designated by district commanders as those in which the presence of gang members had a demonstrable effect on the activities of law abiding persons in the surrounding community.

*Morales,* 527 U.S. at 47-49. It is clear from the Court's opinion (both the plurality and the majority) that the Court was chiefly concerned with the "loitering" aspect of the ordinance's provisions. *See Morales,* 527 U.S. at 53-60 (plurality opinion); *Morales,* 527 U.S. at 60-64 (majority). The majority opinion explained,

> It is true . . . that the requirement that the officer reasonably believe that a group of loiterers contains a gang member does place a limit on the authority to order dispersal. That limitation would no doubt be sufficient if the ordinance only applied to loitering that had an apparently harmful purpose or effect, or possibly if it only applied to loitering by persons reasonably believed to be criminal gang members. But this ordinance, for reasons that are not explained in the findings of the city council, requires no harmful purpose and applies to nongang members as well as suspected gang members. It applies to everyone in the city who may remain in one place with one suspected gang member as long as their purpose is not apparent to an officer observing them. Friends, relatives, teachers, counselors, or even total strangers might unwittingly engage in forbidden loitering if they happen to engage in idle conversation with a gang member.

*Morales,* 527 U.S. at 62-63. It has apparently escaped the appellant's notice that Sections 46.02(a-1)(2)(C) and 71.01(d) are not nearly so broad as the loitering ordinance in *Morales.* These statutes do not apply to gang members and non-gang

members alike.  These statutes do not apply to those engaged in harmful and non-harmful purposes alike.  And these statutes do not apply to loitering.  These statutes apply to possession of a handgun in a vehicle by one of the "three or more persons" "having a common identifying sign or symbol or an identifiable leadership" "who continuously or regularly associate in the commission of criminal activities."

## The Texas Statutory Scheme Concerning Criminal Street Gangs

As noted above, in *Martinez v. State,* a trial court imposed an injunction against members of a criminal street gang, **directly** preventing them from engaging in various gang-related activities.  *Martinez,* 323 S.W.3d at 497.  In addition to addressing the defendant's First Amendment challenge to a particular provision in the injunction, the Court of Criminal Appeals addressed the defendant's claim that the provision was unconstitutionally vague.  The *Martinez* court rejected the notion that the provision permitted arbitrary and discriminatory enforcement.

> We regularly permit police officers to rely on their training and experience in making warrantless arrests, and we have recognized the ability of law enforcement to know and determine gang affiliation by observing an individual's clothing or tattoos.  We therefore conclude that, under these circumstances, it is reasonable to defer to the district court judge's determination that law enforcement patrolling the defined [gang zone], based on their training and experience, would be able to recognize the hand gang signs and clothing associated with gangs in the area and to apply the provision in a non-arbitrary and non-discriminatory fashion.

*Martinez,* 323 S.W.3d at 507-08.  The concept of being a gang member is not a new

35

arrival to the criminal justice system or to law enforcement. Officers have long been able to make reasonable determinations as to who is a member of a group of "three or more persons" "having a common identifying sign or symbol or an identifiable leadership" "who continuously or regularly associate in the commission of criminal activities."

Numerous statutes have been passed by the Texas Legislature dealing with gangs:

- TEX. CIV. PRAC. & REM. CODE ANN. § 125.064 (West 2014) (suit to enjoin public nuisance, specifically those involved in gang activity);

- TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(a)(3) (West 2014) (community supervision condition to avoid criminal street gang);

- TEX. CODE CRIM. PROC. ANN. art. 42.12, § 13E (West 2014) (electronic monitoring of criminal street gang member on community supervision);

- TEX. CODE CRIM. PROC. ANN. art. 42.0197 (West 2014) (affirmative finding of gang-related conduct);

- TEX. CODE CRIM. PROC. ANN. art. 61.02 et seq. (West 2014) (compilation of information concerning criminal street gangs);

- TEX. FAM. CODE ANN. § 54.0491 (West 2014) (special programs for juvenile offenders involved in gang activity);

- TEX. GOV'T CODE ANN. § 421.082(e) (West 2014) (annual report to governor and legislature concerning threat of criminal street gangs);

- TEX. GOV'T CODE ANN. § 499.051 (West 2014) (notification of release from prison of gang member ("member of a security threat group");

- TEX. GOV'T CODE ANN. § 508.227 (West 2014) (electronic monitoring of parolees involved in gang activity);

- TEX. GOV'T CODE ANN. § 772.007 (West 2014) (Texas Anti-Gang Grant Program);

- TEX. PENAL CODE ANN. § 15.031(e) (West 2014) (enhanced punishment for criminal solicitation of a minor);

- TEX. PENAL CODE ANN. § 71.02 (West 2014) (offense of engaging in organized criminal activity);

- TEX. PENAL CODE ANN. § 71.021 (West 2014) (criminal violation of criminal street gang injunction);

- TEX. PENAL CODE ANN. § 71.022 (West 2014) (coercing membership in criminal street gang);

- TEX. PENAL CODE ANN. § 71.023 (West 2014) (offense of directing criminal street gang);

- TEX. PENAL CODE ANN. § 71.028 (West 2014) (enhancement for offenses in gang-free zones);

- TEX. TRANSP. CODE ANN. § 521.4565(b) (West 2014) (offense of manufacturing counterfeit license as criminal street gang member).

Law enforcement officers, prosecutors, judges, and others in the criminal justice system have long been able to make reasonable judgments based upon their training and experience in confronting the various serious issues that have arisen because of criminal street gangs, including determining the membership of those criminal street gangs.

The appellant has failed to show that Sections 46.02(a-1)(2)(C) and 71.01(d) are unconstitutionally vague in all of their applications. These statutes clearly and unambiguously prevent a person from carrying a handgun in his vehicle if that person is one of "three or more persons" "having a common identifying sign or symbol or an identifiable leadership" "who continuously or regularly associate in the commission of criminal activities." These statutes are sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what is prohibited. They establish determinate guidelines for law enforcement, and they are sufficiently definite to avoid chilling protected expression. The appellant's third point of error should be overruled.

———————◆———————

## CONCLUSION

It is respectfully submitted that all things are regular and that the judgment should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ **Alan Curry**

**ALAN CURRY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
TBC No. 05263700
curry_alan@dao.hctx.net

# CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 9,199 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ **Alan Curry**

**ALAN CURRY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 05263700
curry_alan@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been mailed to the

appellant's attorney at the following address on February 20, 2015:


Carmen M. Roe
Attorney at Law
440 Louisiana, Suite 900
Houston, Texas  77002


/s/  **Alan Curry**

**ALAN CURRY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 05263700
curry_alan@dao.hctx.net

Date:  February 20, 2015